LITTLE ROCK AND FORT SMITH RAILWAY CO. v. CHAPMAN.

1. PRACTICE: *Trial by court: Hypothetical declarations of law.*
   There is no error in refusing a declaration of law asked by a party, though it be abstractly correct, if it be based upon a hypothesis of fact inconsistent with the finding of the court. If the finding be erroneous, the remedy is by having it corrected.

2. STATUTE OF LIMITATIONS: *Successive trespasses: When it commences.*
   Defendant built its road-bed so as to obstruct the flow of water from an upper proprietor, but abandoned it, and it was cut through, and the water passed off. Afterwards it built another bed obstructing the flow, for which suit was brought: *Held*, that the statute of limitations commenced at the completion of the last and not the first obstruction.

3. EASEMENTS AND SERVITUDES: *Railroad obstructing surface-water: Damages.*
   A railroad company has no right, in the use of its right of way, to injure the lands of upper proprietors by flooding them with surface-water which had been used to pass over the right of way, when, by reasonable care and expense, it might, consistently with the enjoyment of the right of way, leave a free passage for the water.

Little Rock and Fort Smith Railway Company v. Chapman.

APPEAL from *Pulaski* Circuit Court.

Hon. J. W. MARTIN, Circuit Judge.

*Clark & Williams*, for appellant:

1.   Defendant not liable for obstructing the flow of water across its lands, unless it be a natural stream, flowing within defined limits.   *Washburn on Easements and Servitude (3d ed.), p. 355, 3 a, et seq.; Angell on Water Courses, sec. 108; Addison on Torts, 105; Cooley on Torts, 574; Hilliard on Torts, 584; Taylor v. Fakus, 64 Ind., 167; Schlichter v. Phillippy, 67 Ind., 201; Gannon v. Haryadon, 10 Allen, 105; 6 Railway Age, p. 423; 6 ib., 407.*

2.   There was no such natural flow of water as to render defendant liable.   *Pettigrew v. Evansville, 25 Wis., 223; Hayt v. Hudson, 27 Wis., 656; Kaufman v. Greisemer, 26 Penn. St., 407, 413; Martin v. Jett, 12 La., 504; O. N. Co. v. Mayor, 3 Mart , 214, 233; Lemington v. McDonald, 21 Iowa, 160; Gooddale v. Tuttle, 29 N. Y., 467; Minor v. Wright, 16 La. Ann., 151; Washburne on Ease. and Serv., 356–7.*

3.   The action was barred.   The action accrued on the building of the first embankment.

4.   The damages were excessive.   The company not liable for depreciation of the lots by reason of removal of depots, etc.

*R. J. Lea*, for appellee:

1.   The stream *was* such a natural flow or drain as to entitle appellee to have it kept open for their benefit. *Lawrence v. R. R. Co., 4 Eng. L. and Eq., 265; S. C. Q. B., 643; 35 Ark., 622.*

2.   The action not barred.   The action only accrued on building the new embankment.

Little Rock and Fort Smith Railway Company v. Chapman.

3.   The court did not err in giving the second and fourth instructions on its own motion.   *Gillham v. R. R. Co.*, *49 Ill.*, *484*; *1 Beasley* (*N. J.*), *280*; *41 Ill.*, *502*; *34 N. H.*, *313*; *38 Vt.*, *360–1*; *Washburne on Ease. and Serv.*, *p. 224*, *sec. 16*; *34 Conn.*, *466*; *26 Pa. St.*, *409 to 417*; *15 Barb.*, *102*; *10 Ohio*, *159*; *15 Ohio*, *479*; *3 Conn.*, *463.*

The civil law rule adopted in Pennsylvania, Iowa, Illinois, Missouri and Ohio.   *26 Pa. St.*, *407 to 415*; *21 Iowa*, *160*; *49 Ill.*, *484*; *23 Mo.*, *181*; *16 Ohio St.*, *334*.

Right to stop flow of surface-water depends on degree of injury done, and was established in favor of agriculture. *25 Wis.*, *229*, *230*; *27 ib.*, *663*.

4.   Argues on the facts that the finding of the court was correct, and the damages not excessive.

EAKIN, J.   This is a suit of two minors, by their father and next friend, Chapman.   They were the owners of a half block, consisting of six lots, in the town of Argenta, situated in a low flat of ground, running with the course of the Arkansas River, between a higher bank along the river margin and the higher table-land behind.   The defendant railroad had run its track across this low ground upon a slightly elevated embankment, leaving a connection between the two sides for the passage of water, of only two drain tiles about twelve or fourteen inches in diameter. The embankment passed near by and below the lots in question, and over ground slightly lower.   The gravamen of the complaint was, in effect, that, by means of the embankment and road-way, the natural flow of water along the depressed lands was so obstructed that it was caused to stand upon the lots of complainant; that an orchard had been destroyed, a garden much injured, a stable rendered useless, the whole premises made miry, and generally the lots made less valuable.

30

The answer, in effect, set up the privileges of its charter; denied the existence of any water-course, as alleged; that there had been any want of care or skill in the construction of the embankment and road-bed; and that the complainants had sustained any injury from its construction, for which it was accountable.

The issues made were submitted to the court upon the pleadings and a mass of testimony regarding the nature of the ground and the embankment, and the supposed injury to the lots. Such part of it as may be necessary will be referred to hereafter, in connection with the questions of law to which they are applicable. It may be well to premise here, as one of the undisputed facts, that a number of years before, a similar road-bed had been run through the flat, and temporarily abandoned. The embankment had been cut through by other parties, and it had been left open, till within three years before the commencement of this suit, when another was built, nearer the lots, but not affecting them differently, to any material extent, which was the subject of this complaint.

The court found the facts to be : "That within three years before the bringing of the suit, in this case, the defendant company did erect and maintain their embankment on their right of way, across a natural drain, through which the accumulation of waters from the surrounding country, in their natural flow, passed off from the land of plaintiffs and into the Arkansas River. That the defendant company had, by reason of a failure to place sufficient culverts or drain-pipes in said embankment and road-bed, obstructed the usual flow of water across the grounds occupied by this defendant, and had dammed up the water and caused it to flow back and accumulate on the plaintiff's land. That by the use of ordinary care and caution in the construction of such embankment, the damage to plaintiff's

land might have been avoided, and that, by reason of the overflow caused by said embankment, the plaintiff has suffered damage to the extent of $250."

Judgment was entered accordingly. A motion for a new trial was overruled. The defendant made a bill of exceptions and appealed.

The first ground of the motion was that the finding was contrary to the law and evidence. In connection with this the fourth ground may be considered, which was that the damages assessed were excessive. Although as to the *facts* concerning the damage, and its extent, resulting from the construction of the road-bed, and the nature of the ground, and the obstruction of water, the evidence is conflicting, we think, under the rules of this court in such cases, there is enough to support the finding. Whether, in view of its results, the finding be contrary to law, will depend upon the view taken of the instructions and declarations of law.

No instructions were asked by the plaintiffs. In view of the importance of the principles involved, we deem it advisable to set forth in full those asked by defendant, the action of the court upon them, and the declarations of law made by the court of its own motion. The defendant asked the court to declare the law upon the facts to be as follows :

First—That, to entitle the plaintiff to recover, it must be proved that the said defendant, in building its railroad, or in constructing some part of its works in connection therewith, so obstructed or impeded some natural stream or flow of water, by erecting an embankment of earth across such stream or natural flow, in such manner as to cause the same to overflow the premises of the plaintiff, thereby causing the damages complained of.

Second—That if, in order to drain the water from the plaintiff's premises, it was necessary to dig a ditch across

and through the defendant's grounds; and that, without such ditch, such water would not flow in that direction, except upon occasions of overflow by the river, or by extraordinary rainfalls, then it was not such a natural stream or flow or drainage of water as would entitle the plaintiff to have kept open for his benefit, and the plaintiff could not complain on account of the road-bed or other embankment being built on such grounds by the defendant.

Third—That if the defendant did, by one or more embankments of earth, erected upon its own grounds, or upon grounds not belonging to plaintiff, by want of sufficient culverts or openings through such embankments, wrongfully obstruct the flow of the water from the said premises, still, if such obstructions were first built and erected more than three years before the commencement of this suit, the plaintiff is barred by the statute of limitations.

Fourth—That if such obstructions to the flow of the water were built and erected more than three years before the commencement of this suit, then the fact that a ditch was cut or dug through the said obstructions, by other parties than the defendant, and without its knowledge or consent, the same being filled again by the defendant, by the erection of a new embankment in the place of the old one, such ditch would not obviate or suspend the operation of the statute of limitations.

Fifth—It is not negligence on the part of defendant, and it is not liable for not providing against accidents and occurrences which men of ordinary skill and prudence would not have foreseen; and if the defendant did, by culverts or openings through its said embankments, provide ample escape for the waters naturally flowing upon said land, and for the largest rainfalls usually occurring from year to year, she is not liable, and can not be held responsible for the consequences of such storms or rainfalls as are extraordinary and unprecedented.

Little Rock and Fort Smith Railway Company v. Chapman.

Sixth—That if the road-bed, alleged to have been built by the defendant, at the southeast corner of plaintiff's alleged premises, was in a public street of said town of Argenta, and not on either the plaintiff's nor defendant's lands; that it was done by the order and sentence of the board of health as a sanitary provision against a prevailing epidemic, and not for any use or benefit of the defendant, then the defendant is not liable for injury therefrom, notwithstanding the same was built by persons who were the agents and employés of the defendant at the time.

Seventh—That in estimating the damages the court can only consider the actual value of the lands and premises *injured* at the time the work complained of was completed, and compare it with what the value would have been if the overflow had remained as before the obstruction was built, and fix the damages at the difference between the two values.

The court declared the law to be as contained in the first, fifth, sixth and seventh of said declarations, but refused the second, third and fourth; to the refusal of which the defendant excepted.

The court then altered and changed the said third declaration of law, and declared the law to be as in the declaration so changed, which was as follows, to wit:

" That if defendant did, by one or more embankments of earth, erected upon their own grounds, or upon grounds not belonging to plaintiffs, by want of sufficient culverts or openings through such embankments, wrongfully obstruct the flow of the water from the said premises, still, if such obstructions were first built more than three years next before the commencement of this suit, the plaintiff is barred by the statute of limitations, *as to such embankments as were built more than three years before the bringing of this suit, and the finding should be for the defendant as to them.*"

To this the defendant excepted, and thereupon the court, of its own accord, declared the law to be as contained in the five following declarations:

First—That the issue to be settled in this case is, was the erection of the embankment complained of any injury to plaintiff's property, for which he had a right to hold the defendant responsible; and, if so, how much has been the damage thereby.

Second—The plaintiff has a right to the unmolested use of the natural drainage afforded by the topography of the surrounding lands, and the defendant would have no right to interfere with or deprive the plaintiff of the benefits of such drainage, if any is shown, as was afforded by the natural flow of the water over the land of the defendant.

Third—And if the evidence shows in this case that there was no natural drainage or flow of water from the plaintiff's land across the land of the defendant, on which the embankment was erected, then the erection of the embankment would be no injury of which he would have a right to complain, and the finding should be for the defendant.

Fourth—But if the evidence shows that there was a natural flow and drainage of the water accumulating by rainfall, or otherwise, from the surrounding country, by which the water, in its natural flow, was carried off from the lands of plaintiff across the lands of defendant, and that, by the erection of the embankment complained of, this flow was prevented, and the lands of plaintiff caused to be overflowed, then the defendant would be responsible in damages to the plaintiff to the extent of the injury caused thereby to his property.

Fifth—That though there may have been an embankment built by the road over three years before the bringing of this suit, which obstructed the water flow in like

Little Rock and Fort Smith Railway Company v. Chapman.

manner as the first road-bed; yet, if for a long time before the erection of the present road-bed, this embankment had been abandoned as a road-bed by the company, and a ditch had for some years been, without objection of defendant, cut through said embankment, so as to avoid any obstruction by such embankment, then the erection of the last road-bed embankment would be the time for which the statute of limitations would run, and not the first. .

To the second, fourth and fifth of the above declarations, made by the court, the defendant excepted.

The second ground of the motion for a new trial, is the refusal of the court to make the second, third and fourth declarations of law proposed by defendant; and the announcement by the court of its own motion of the declarations numbered second, fourth and fifth.

Taking up the second declaration on the first branch, and taking "defendant's grounds" to mean the width of its right of way, it assumes hypothetically that it was in its natural state higher than the plaintiff's lots, and afforded no natural drainage, which the law would recognize as useful, or as imposing a servitude; and on that hypothesis it declares that plaintiff could not compel defendant to keep a ditch open. That is so. Abstractly the declaration is correct, but it was not applicable to the facts as found by the court. There was no jury in the cause. The declarations of the court were only to show the grounds of its decision, and if the court declined to announce the law upon a hypothesis in conflict with its view of the facts, the defendant could not be injured. If the findings were erroneous, the proper remedy would be by their correction. It is not like a case where instructions are asked for a jury, and where the court can not be advised of the views of the jury as to the facts. When a case is submitted to the court, the declarations of law and the findings of fact may be

1 PRACTICE:. Trial by the court. Hypothetical declarations of law.

Little Rock and Fort Smith Railway Company v. Chapman.

simultaneous. (See *sections 4686 and 4687 of Gantt's Di
gest.*) We have already said that there was evidence to
sustain the findings of fact, one of which was that the
*locus in quo* was a "natural drain through which the accu-
mulation of waters from the surrounding country had, *in
their natural flow,* passed off from the land of plaintiff
across the line of said road-bed," etc. There was no error
in refusing to make the second declaration on a different
hypothesis.

2. STATUTE
OF LIMIT-
ATIONS:
Actions
against
railroads
for obstruc-
ting flow of
water.
The third and fourth declarations asked concern the
statute of limitations, and were properly refused. The old
nuisance, if it were one, had been abandoned, and by some-
body or other abated. Why should the plaintiff then have
sued? The statute of limitations clearly began to run from
the completion of work on the new embankment. (*St. L.,
I. M. and S. Railway v. Morris, 35 Ark., 626.*) The law upon
this point was correctly given by the court in its modifica-
tion of the third declaration asked by the defendant, which
alteration is made the third ground of the motion for a new
trial, and also by the fifth declaration given by the court of
its own motion.

This disposes of every question save one, and brings us
face to face with an uncertain principle, never heretofore
settled in this State.

3. EASE-
MENTS
AND SER-
VITUDE:
Railroad
obstruct-
ing surface
water.
It arises on the second and fourth declarations of law,
made on its motion by the court. We must decide whether
a railroad building its bed across a natural drainage of
surface water, which is not a defined stream, may obstruct
its natural flow to the detriment of upper proprietors; or
is under obligation to supply a reasonable mode of passing
it through its structure, so as to save the upper proprietors
harmless to the same extent as they were before. It is
certainly true that the road is under no obligation to
afford better drainage. The court was of opinion that the

road was under the obligation first above suggested, and finding that the obligation had not been discharged, based the judgment for plaintiff on that ground. The proof is clear that the drain tiles did not suffice to afford the former drainage, and that a reasonable culvert, which might easily have been built, would have done so. The question arising upon the instructions, in connection with the facts as found, is not, indeed, the naked one, whether or not the railroad company was bound to refrain from building the embankment in a case where it would *necessarily*, notwithstanding all efforts and devices to the contrary, obstruct the surface water. That might be too hard a measure, and might deprive the community of the benefit of great improvements, with slight gain to private proprietors. But the question arises under a modified aspect. The facts, as found, were that all interests might have been reasonably protected. The road might have enjoyed its road-bed without injury to the proprietor of the lots, if it had been considerate enough to have built a culvert, instead of using two insufficient drain pipes. In short, has a railway company, in the use of its conceded right of way, the right to injure the lands of higher proprietors by flooding them with surface water which had been used to pass over the right of way, where, by reasonable care and at a reasonable expense, it might, consistently with the enjoyment of the right of way, leave a free passage for the water.

I think it may be assumed in the outset that no man with just and kindly sentiments, would be apt to treat a neighboring proprietor in that fashion, and there may be much doubt, moreover, whether it accords with the golden rule. But we must waive these considerations, and decide it as a matter of law, and as settled by the weight of authority, and the better reasoning.

It is well settled by all common law authorities, wherever that system prevails, and has been several times announced

by this court, that each proprietor upon running water, flowing in a definite channel, so as to constitute a watercourse, has a right to insist that the water shall continue to run as it has been accustomed; and that no one can obstruct or change its course injuriously to him without being liable in damages.

With regard, however, to surface water, not confined to well marked channels or banks, this court has always recognized a difference. (*27 Ark., 572; 29 ib., 574.*) It has never adopted the civil law rule that lower lands of one proprietor are subservient to the higher lands of another, for the drainage of surface and percolating water. The doctrine of the common law, as found in all the cases, was that, for the purpose of draining, building or any other useful and proper object, each proprietor had the right to elevate the surface of his own land, or to ward off the influx of surface water from his neighbors, without liability.

Whatever changes, modifications or qualifications of this right the courts of law may have adopted, must legitimately have resulted from the application of old principles to new conditions, or the refusal to apply them to conditions to which they are not applicable; and not from any intrinsic force of the civil law as a rule of decision. It has been much the habit of law judges to comment upon the civil law doctrines approvingly, and some of the courts of the Union have adopted them, expressly, but neither in this nor other cases can we feel authorized to depart from the common law rules of decision, to any greater extent than as above indicated. By statute the common law of England, as it existed prior to the fourth year of James I, is made the rule of decision in this State, so far as the same is of a general nature, and applicable to our condition. *Gantt's Digest, sec. 772.*

This is a case of surface-water. There is no running stream with any defined banks. A broad swale or depression of land, with very little difference in level, lies parallel with the river bank. It has a gradual slope downwards, by which the rain water which falls upon and near it, and the occasional overflows of the river, are slowly carried in and over the soil, to a break in the river bank. It is from a half to three-quarters of a mile in length, and belongs to a number of proprietors. The tract of the plaintiff is described as a part of a town block in Argenta, but seems to have been occupied as a garden, orchard and stable lot. So far as appears, the adjacent lands are open. The place has not the characteristics of town property, valuable only for building purposes, but rather of a small tract useful for tillage and domestic purposes, if not rendered unfit for such by water. Across this swale, between the lots and the break in the river bank, the railroad bed has been laid, without sufficient means of passing the water, whereby the natural drainage is retarded, and waters coming down the swale are thrown back over intervening lots, and flood those of the plaintiff, rendering them less valuable. The injury would not have occurred if the company had left a culvert.

It will be observed that the effect of the obstruction is to ruin a broad scope of land, besides those of the plaintiff, and that the water thrown upon his tract, is not a casting back of the surface-water from his own land, specially, but rather a turning upon it of a portion of the surface-water of the whole swale, coming down off the lands of others, and which would naturally pass by. The lots are not contiguous to the embankment, but separated by the property of others.

With regard to running streams, all the authorities, English and American, agree in holding that a riparian

proprietor has no right to alter their usual flow in any manner injurious to others above or below him, under any circumstances, whatever may be his necessities, or whatever care he may exercise. The right of each to use the water, as it is accustomed to run, is absolute, but there is a correlative duty. He may not retain it upon his soil by dams and reservoirs, that it may not go on down in its usual course to his neighbor, except the variation be small and not unreasonable; nor can he so obstruct it as to flood the land of his neighbor above. Upon this point the authorities are numerous and uniform. They are to be found in all the text-books upon the subject, and citations are unnecessary.

And, with regard to surface-water, the common law courts *generally* agree that each proprietor has the right to fend off the surface-water flowing naturally or falling upon his own soil, so as to divert its course, and may even throw it back upon his neighbor from whose land it came. The point, however, upon which there is amongst them great conflict, and no little obscurity, is as to whether this right is *absolute* at the will of the lower proprietor, or whether its exercise must be reasonable for proper objects, and with due care to inflict no injury beyond what may be fairly necessary. The question rather concerns the good faith of the act, and the manner of doing it, than the right itself. If necessary, the right is generally unquestioned, and if done with due care of the property of another, although the latter may be injured, he has by the common law no remedy.

The cases which hold that it may not be done wantonly, unnecessarily or carelessly, do not proceed upon the civil law doctrine of the servitude of the lower property, so much as upon the common law maxim, *Sic utere tuo ut alienum non loedas.*

Little Rock and Fort Smith Railway Company v. Chapman.

Some of the cases seem to go to the full extent of the civil law doctrine of the servitude of the lower tenement, holding that the superior or dominant land has the absolute right to the discharge of its surface-waters on the lower, under all or any circumstances, in the nature of a common easement. Such, of course, are the holdings of the courts of Louisiana, where the civil law is the basis of their jurisprudence. The same principle seems to have guided the courts of Pennsylvania (see *Martin v. Riddle*, *26 Penn. St.*, *415; Miller v. Laubach*, *47 Penn.*, *155*), and of California. (See *Ogburn v. Collyer*, *46 Cal.*, *347*, where a number of cases are cited and commented on.) In several other States cases have occurred upon the same line and course of reasoning. With regard to all these, however, so far as they proceed upon the adoption by the courts of the civil law doctrine as the more reasonable one, we feel precluded by our statute from accepting them as authority.

Another class of cases has proceeded upon the adoption of the old common law rule, as it is asserted to be, in its utmost rigidity—holding positively and without qualification, that no cause of action can in any case arise from damming back surface water upon the land of an upper proprietor. Such seems to be the purport of the cases in Massachusetts, Indiana, Wisconsin, and some of the other States.

In many others, if not in most of the American States, the common law doctrine has been clothed with qualifications, although the decisions of the same State are often hard to reconcile. A full and able collection and discussion of the cases may be found in the work of *Mr. Washburne on Easements and Servitudes*, *3d ed.*, *p. 353*, *et seq.*, from which he infers the prevailing doctrine to be that, "*If, for purposes of improving and cultivating his land*, a land-owner raises or fills it, so that the water which falls in rain or

snow upon an adjacent owner's lands, and which formerly flowed on to the first-mentioned parcel, is prevented from so doing, to the injury of the adjacent parcel, the owner of the latter is without remedy."

The case of *Basset v. Salisbury Man. Co., 28 N. H.*, reported also in the *Am. Law Register, N. S., vol. 3, p. 223*, it was held that where the owners of a dam on a water-course had obstructed the natural drainage of a piece of land, *not situated on the water-course*, they were liable for damages, unless such obstruction was caused by them in the "*reasonable use* of their own land or privilege," and that, in any particular case, reasonable use is a mixed question of law and fact to be submitted to a jury under instructions. The same doctrine was, in effect, announced in the case of *Sweet v. Cutts, 50 N. H., 439.* See, also, *11 Am. Law Register, N. S., p. 11.* In this case, Chief Justice BELLOWS made the *reasonableness* of the use or disposition of surface and percolating water the test of liability for injury to others. Mr. Washburne, in his work (*supra*), page 455, speaking of all that class of cases which deny any servitude of the lower tract to receive the surface water from the upper— that is, those which repudiate the doctrine of the civil law —says they all go upon the hypothesis that the party causing the injury was in the *reasonable use* of his own land, and acting without malicious intent to injure his neighbor.

The very question now under consideration arose on demurrer in the case of *Gillham v. Madison Co. Railroad Co., 49 Ill., 484.* The plaintiff's land was in a depression along which the surface water collected from higher grounds flowed off into a lake. The defendant railroad ran an embankment across it, entirely filling up the outlet, and flooding the plaintiff's land. He sued for damages, alleging negligence in constructing the embankment without leaving an opening. A demurrer was sustained, and

the plaintiff appealed. The Supreme Court, reversing the judgment, rejected the doctrine of the Massachusetts cases, declaring, with emphasis, that they wholly ignored that most favored and most valuable maxim of the common law which lay at the very foundations of good morals and the peace of society, *sic utere tuo*, etc. The court alluded to the fact that this was according to the doctrine of the civil law, but said it had found favor in almost all the common law courts of England and America, citing some cases. But it was not necessary to refer to the doctrine of the civil law with reference to surface water, for, as we have seen, the common law doctrine was entirely sufficient to have prevented the railroad from using its right of way in an unreasonable manner, to the detriment of another.

In another case in Illinois, *City of Bloomington v. Brokaw & Gregory, 77 Ill., p. 194*, the city was held liable in damages for raising the grade of a street and throwing surface water on the lot of plaintiffs, when they might have avoided such injury by proper sewers and drains.

The Supreme Court of North Carolina, upon the common law principle of *sic utere tuo*, etc., denied the right of a land owner, by a dyke or barrier, to throw back the natural flow of the surface water upon the adjoining higher lands. It was remarked that this was founded upon principles of reason and equity, common to both civil and common law. We are not prepared to go so far, for we conceive that, in its unqualified assertion, it is the doctrine of the civil law alone. But if it be meant that he may not do so arbitrarily, wantonly and unnecessarily, without a reasonable prospect of benefit to himself, to be determined as a fact, it is in accord with many common law authorities. *Porter v. Durham & Brown, 74 N. C., 767.*) The proper qualification of the doctrine, by the same court, is found in the previous case of *Raleigh and Augusta Air Line R. R. v.*

*Wicker et al. (ib., 220)*, where it is said, by she same judge, RODMAN, that every one has the right *to build on or otherwise improve* his own land, subject to certain equitable limitations, and if, as an incidental consequence of such *lawful use*, the flow of surface water from adjoining land is obstructed, the owner of such land can not recover damages as for a tort.

In accordance with these views as to limitations of the power, and the care required, are *Beard v. Murphy, 37 Vermont, 99 ; Coates v. City of Davenport, 9 Iowa, 227 ; Ross v. City of Clinton, 46 Iowa, 606 ; Aurora v. Love, 93 Ill., 521 ; Shawneetown v. Mason, 82 Ill., 337*, and many others; whilst there are some, *per contra*, holding the unqualified right of the land owner or corporation exercising a franchise to obstruct the flow of surface water from higher land at its pleasure with or without good reason, or any care for others. The latter class of decisions do not commend themselves to our sense of justice, nor seem in accordance with the maxim of law so often quoted, and which is but a paraphrase of the golden rule of the Christian.

Mr. Redfield, in a note to the case of *Sweet v. Cutts*, in the American Law Register, volume 11, page 24, expresses his view of the authorities in this guarded manner:

" It must be conceded, we think, that the right of landowners to deal with surface water, and all waters mixed with the soil, or coming from underground springs, in any manner they may *deem necessary for the improvement or better enjoyment* of their own land, is most unquestionable. And if in so doing, in good faith, and with no purpose of abridging or interfering with any of their neighbor's rights, they *necessarily* do damage to their neighbor's land, it must be regarded as no infringement of the maxim, *sic utere tuo ut alienum non loedas*."

This case, like all others, must stand upon its peculiar

grounds. Did the railroad bring itself within the scope of these wholesome conditions, in building its embankment without a proper culvert? It was for the court to determine in framing declarations of law applicable to the facts.

The road-bed lay, with its dead, solid length, across a portion of country fit in its natural state for cultivation and habitation, and growing peach orchards and gardens. It obstructed the only natural drainage, and rendered the grounds more wet and miry—almost destroying all value. The drains afforded were insufficient. The company, as their agent said, had intended putting in a culvert, or some better means for the passage of water. It might reasonably have done so, but for some reason it was omitted. Its only property was its right of way. It was not *necessary* to the enjoyment of that, that the bed should be solid throughout. The damage was of course unnecessary, and was not the result of a fair and proper exercise of its franchise. It was not reasonable that it should render so much property useless, when it might so easily have prevented it without detriment to its operations. It ought not to be allowed to protect itself in an obvious wrong, by any technical distinction between running and surface water. Its franchises are for the public benefit, to be reconciled with a reasonable regard to the profits of the stockholders, but it can not, on that account, stand on any higher ground in their exercise, than any private citizen. It is bound to use them without unnecessary detriment to the rights of private citizens.

We think it was not justified in making the obstruction in this case, and that the court committed no error in its declarations of the law applicable to it. If given to a jury the declarations should have been qualified by the hypothesis that they might find negligence or want of due care

in so constructing the road-bed as to make an unnecessary or unreasonable obstruction, but as there was a simultaneous finding by the court to that effect, the declarations are to be considered in connection with the finding.

Affirm the judgment.