ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY

*v.* SAUNDERS.

Opinion delivered April 30, 1906.

RAILROAD—LIABILITY FOR OVERFLOW—EVIDENCE.—A verdict against a railroad company for damages for injury to a growing crop is sustained by proof that in time of overflow the water was from 18 inches to 2 feet higher above than below defendants' roadbed, that by reason of insufficient openings in the roadbed the water was held on plaintiff's farm several days longer than it otherwise would, and also that the character of the water was changed from running to eddy water which was more injurious than running water.

Appeal from Clark Circuit Court; *Joel D. Conway*, Judge; affirmed.

*B. S. Johnson*, for appellant.

1. The verdict is contrary to the evidence, and not justified by the facts. Over 13 per cent. of the length of the dump is shown by undisputed evidence to be devoted to bridges, trestles and openings for the passage of water. There is no testimony that the openings were not amply sufficient to pass off the water that annually and usually fell, nor that the embankment held water up to the injury of the upper lands. On the contrary, the evidence is positive that the openings were wider and larger than the rule of experience required.

2. The evidence is undisputed that the creek overflowed in the same manner long before the construction of the dump.

3. The rainfall in June and July, 1902, was extraordinary and unprecedented, for which the appellant is not responsible.

4. The court erred in its instructions. The fifth was error because it was not based upon any evidence before the jury. It was error to deny the fourteenth prayer of defendant, because it was in evidence that the creek overflowed its bottoms long before the dump was built, and it was incumbent upon plaintiff to show, not only that he was damaged by reason of a defective embankment, but also what part of the damage was due to the embankment apart from that would have occurred without regard to the embankment. 56 Ark. 581.

5. The court erred in its sixth instruction, given at request of plaintiff, same being on the measure of damages. 56 Ark. 581.

*John E. Bradley*, for appellee.

1. If appellant's road was so constructed as to materially obstruct, retard or divert the waters of the stream in times of overflow, to appellee's injury, appellant is liable. As to rights of riparian owners, see Gould on Waters (2 Ed.), § 204. The proof is that in times of overflow the water stood from 18 inches to 2 feet higher on the upper side of the dump than on the lower side. It is also in proof that the overflows are longer both in coming on and flowing off than before the road was built. An injured proprietor is equally entitled to redress whether the damage is caused by a diversion of the water, by backwater, by inundation

from above his land, or by the percolation of water through the banks.   He is entitled to enjoy the natural fall and current of the stream.   Gould on Waters (2 Ed.), § 209, and cases cited.

2.   Appellant's contention that the rainfall in June and July, 1902, was extraordinary and unprecedented is without proof to support it.   It is in proof that in previous years the overflow had been higher than in 1902, had at one time washed away appellant's roadbed in the bottoms of this creek, and at another over the road-bed in many places.   By its previous experience appellant was admonished of the necessity to exercise diligence, prudence and care, and to use proper means and appliances to avoid a congestion of floods which it might reasonably have anticipated.   Gould on Waters, § 298 and notes.   Freshets are regarded as ordinary which are well known to occur in the stream occasionally through a period of years, although at no regular intervals.   *Ib.* § 211 c.

3.   There was competent evidence on which to base the instruction on the measure of damages.   56 Ark. 612.   See also for rule as to measure of damages:   11 S. W. 526; 25 S. W. 54; 23 S. W. 546; 7 S. W. 353; 39 S. W. 204.   In arriving at the measure of damages, great liberality in making proof is allowed, and even the opinion of a witness qualified by experience is admissible—stating all facts upon which his opinion is based.   60 Tex. 204.   See also 69 N. Y. 61; 50 Mo. 348; 85 Ill. 594; 38 Iowa, 518.

HILL, C. J.   Saunders owned a large and fertile farm on Terre Noir Creek in Clark County.   Approximately speaking, the railroad track ran north and south, crossing Terre Noir at right angles.   The general course of this stream was west to east.   The distance between the foothills of the Terre Noir valley was 8400 feet, according to Saunders' evidence, and 6500 feet according to the railroad's evidence.   The difference is immaterial, and only affects the percentage of the openings in the railroad embankment.   There is practically no conflict of evidence as to the extent of the openings, and, averaging the estimates given, it may be assumed that 13 per cent. of the length of the embankment, or dump, as it is called, was open space for the passage of water. The dump was four to five feet high.   Terre Noir was a very tortuous stream, and it was a neighborhood saying that it overflowed every time it thundered.   The railroad was constructed in

1873. In 1882 the high water washed away the roadbed in the bottoms of Terre Noir, and in 1892 water ran over the dump in 18 places, and in 1902 the water came up almost up to the track. The dump had been raised some 18 inches since the 1882 overflow. There was some evidence that the 1882 overflow was the highest, and some that the 1902 was the highest.

Saunders sued the railroad, alleging injury to his crops in 1902 by reason of the unskillful and negligent construction of the railroad dump, in that it was so high that it obstructed and retarded the passage of water in times of overflow, and in not leaving sufficient openings in the dump to let the water in times of overflow pass off and flow as it naturally would do but for such obstruction and insufficient openings. The action was not for causing the overflow, but for hindering the natural drainage in time of overflow. Saunders recovered a verdict for $1,500, and the railroad appealed.

1. The principal contention of the appellee is that the verdict is contrary to the evidence, and was not sustained by the facts.

That this creek was subject to overflow as far back as the memory of man runneth is plain from the evidence; that much destruction was wrought by it before the railroad was built is established; and that since the railroad was built frequently there has been much destruction of crops, both above and below the railroad dump, is fully proved. But the appellee has established by an overwhelming weight of evidence that in times of overflow the water is from 18 inches to 2 feet higher on the upper than the lower side of the dump. While some of this testimony must be discounted, for the difficulty of making such estimates with the eye, yet in one overflow a witness put it to the test of the level, and found it 12 inches higher at one place and 15 inches at another. The effect of this damming the water was to cause it to stay on the Saunders farm several days longer than it otherwise would, and change the character of the water from running water to back or eddy water with no apparent current. Farmers experienced in observing overflows testify that still water causes more damage than running water.

An engineer of appellant company testified that the difference in the height of the water on the two sides of the dump

was only two inches; but his only data to base his calculations upon were the watermarks on the trees. It was also shown by this witness that the open space in the dump was about 1000 feet more than the experience of this road in North Arkansas, where the streams run more rapid, demonstrated was necessary to carry off the water. Whatever may have been the experience with watercourses elsewhere, there can be no doubt that in times of overflow the water on the upper side of this dump stood from one to two feet higher than on the lower side; and this fact was sufficient evidence to go to the jury on the issue as to whether the roadbed was negligently constructed, in that it did not allow sufficient space for the drainage of the natural flow of the water. The company, from having its roadbed washed away in 1882 and having the water running over it in 1892, was fully informed of the volume of water to be naturally expected to be carried by this creek which "overflowed whenever it thundered."

2. It is contended that the undisputed evidence shows that the creek overflowed in the same manner before the construction of the road. That there were disastrous overflows before the road was built, there can be no doubt, but that does not establish the fact that the dump had nothing to do with the damage to appellee's crop. There was abundant evidence tending to prove that the dump causes the water to stay longer and retard its flow and force it back onto the farm, instead of draining off naturally.

3. The appellant contends that the rainfall in June and July, 1902, was extraordinary and unprecedented, and it is not responsible for failing to provide against it.

The evidence fails to sustain this contention. The evidence of the rainfall at nearby towns was introduced, and also of witnesses that the season was extremely wet; but other evidence tended to show higher overflows at other times. The history of this creek and its treatment of appellant's roadbed was sufficient to bring the everflow in question within the things reasonably to be expected in constructing a dump across the valley.

4. Questions are raised as to the instructions, and the court has gone over them carefully, and fails to find error in them. The court gave 11 instructions requested by appellant, and these instructions fairly presented every phase of the law which the

appellant was entitled to have submitted to the jury. Four instructions were refused. So much of them as appellant was entitled to were covered in other instructions.

5. The instruction on measure of damages is attacked, as is also the evidence on this issue. The instruction is in accord with *Railway Company v. Yarborough,* 56 Ark. 612, where this subject is fully discussed by Mr. Justice MANSFIELD. There was some evidence adduced on this subject which offended against the rule in the Yarborough case, but it was not objected to, and there was sufficient evidence within the rule to support the verdict.

The unsatisfactory part of the case is the difficulty of determining what damage was caused by the overflow for which the railroad was not responsible and what was caused by the detention and backing of the waters for which the railroad was responsible. There is evidence on this point, and a jury from the body of Clark County, which would naturally be composed largely of farmers, is a much better tribunal to determine this question than any other.

If the jury were authorized to find the railroad responsible for all the injury to the crops, there was evidence which would have sustained a verdict of $3,500 or more. The jury were fully instructed on this point in instructions prepared by the appellant, and from the fact that their verdict is only $1,500 the court must infer that they have carefully eliminated all injury not the result of this obstruction. Certainly, their verdict is not without evidence to support it, and that is as far as this court can consider it.

Judgment affirmed.

Mr. Justice BATTLE dissents.