ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY

v. MAGNESS.

Opinion delivered December 13, 1909.

1.  LIMITATION OF ACTIONS—DIVERSION OF STREAM AND DAMAGE TO LAND.—
Where the obstruction of a stream by reason of the construction of an embankment and ditch was of a permanent nature and necessarily injurious to the lands of adjacent proprietors, the damages

thereby caused can be recovered only by suit brought within three years from the time the embankment and ditch were completed. (Page 52.)

2. WATERS—DIVERSION—LIABILITY.—One who diverts the flow of a natural stream or of surface water becomes liable for the damage thereby wrought to the lands of another. (Page 53.)

3. SAME—OBSTRUCTION OF SURFACE WATER—EVIDENCE.—In an action for injuries to land by obstructing the flow of surface water, evidence that a cattle guard on defendant's roadbed was at one time open, but is now closed, is competent as tending to prove an obstruction of the surface water. (Page 54.)

4. EVIDENCE—OPINION OF EXPERT AS TO DAMAGE.—It was not error to permit an expert witness to testify his opinion as to the damage to lands caused by the diversion of a natural stream upon them. (Page 55.)

5. DAMAGES—DIVERSION OF STREAM.—The damages recoverable for the diversion of a natural stream causing subjacent lands to be overflowed is the difference between the value of the land before the diversion and afterward. (Page 55.)

6. SAME—VALUE—ASSESSMENT.—Valuations placed upon plaintiff's lands by the assessor were not evidence of their value before or after an alleged damage to them caused by defendant. (Page 56.)

7. TRIAL—REMARKS OF JUDGE—PREJUDICE.—A colloquy between the court and appellant's counsel in which the court asked counsel not to try to put in any evidence that was not admissible, and added that the court was willing that all legitimate testimony should be brought in, was not prejudicial. (Page 56.)

Appeals from Independence Circuit Court; *Charles Coffin,* Judge; affirmed.

W. T. & R. T. Magness and S. A. Moore sued appellant separately. The actions were consolidated and judgments recovered by each of the plaintiffs.

### STATEMENT BY THE COURT.

"Thomas Creek," a stream in Independence County, Arkansas, flowed in a course that was generally south and southwest into "Mud Creek," which latter stream emptied into White River. In 1882 appellant built its railroad across "Thomas Creek." The stream had well-defined banks where the appellant crossed it with a trestle, designated in the evidence as No. 1523. Soon after this trestle was constructed, the stream began to fill up above and below the trestle. The main channel continued to fill, and at a point about a half-mile north of the trestle the waters began to diverge in a southeast course, making a new channel.

Part of the waters of Thomas Creek flowed in this new chan-
nel, which gradually cut its way in a southeast direction to the
railroad about one-fourth of a mile east of trestle No. 1523.
When the waters flowing through this new channel reached the
railroad, they flowed over and through the roadbed and con-
tinued on south and southeast of the railroad, spreading out
through the bottoms and finally into Mud Creek, and thence into
White River. In times of high water, both the old and new
channels of Thomas Creek would overflow and spread over the
lands of one Powell. In 1902 Powell, to protect himself from
the overflow of these waters, turned the entire flow of the waters
of "Thomas Creek" in low stages through the new channel, by
digging a ditch and straightening the new channel in places.

Powell testified that when he bought the land in 1902 he
saw that the channel of the old creek was changing east within
itself, "scooping a great big channel, and the water was leading
from the old creek bed to those places leading from the southeast
corner of his field near the cattle gap in the railroad." "He
channeled it on through."

One witness testified that the digging of the ditch by Powell
did not make any particular difference. Says the witness: "Be-
fore that (Powell) ditch was dug, the water would leave the old
channel and make across his field, make a southeast course, mak-
ing down the railroad; some of it would leave it over two-thirds
of the way up the ditch from the railroad to the county road;
all the way gradually along it would cut out gullies (they are
there to be seen yet, some of them), and would cut out gullies,
making its course that way; before that the biggest part of the
water went that way anyhow; so far as the cutting of that little
ditch through that field, it didn't make a great deal of difference
in the amount of water that went down the railroad there before
the ditch was cut."

After the cutting of the ditch by Powell, the water at low
stages even passed through the new channel, and over and across
the railroad, and thence south and southeast into Mud Creek.
While this condition continued, even in times of highest flood,
the waters from Thomas Creek did not damage the land of
appellees.

In 1906 appellant raised its roadbed considerably from trestle

No. 1523 east to what is called trestle No. 1522; and cut a wide ditch from the point where the waters of Thomas Creek, through the new channel, reached its track; thence east on the north side of its roadbed to trestle No. 1522. This ditch was cut by the railroad in August, 1906. After the appellant thus raised its roadbed and cut the ditch, the whole volume of the waters from Thomas Creek passed through this ditch. The raising of the roadbed and the digging of the ditch caused the waters of Thomas Creek that had formerly passed over, through and across the railroad now to flow further to the east and south, and in times of flood they spread out over the lands of appellees, producing the injury of which they here complain.

The complaints were separate, each plaintiff alleging the damage he had sustained by reason of the overflow of his land. The alleged cause of action was as follows: That in August, 1906, defendant wrongfully and unlawfully changed the usual, ordinary and natural course of said creek, and the flow of surface water north of said railroad right-of-way and of plaintiff's lands by filling the opening or trestle in the embankment through which said creek had formerly passed, and by digging a large ditch from said point where said trestle formerly existed easterly along the north side of the railroad track to a point near the corporate line of the town of Newark, and about the center of the southeast quarter of the northwest quarter of section 5, at which point defendant constructed a trestle under its said railway track. That, by reason of the construction of said ditch and the raising of its track and embankment, the waters of Thomas Creek were diverted from their usual, ordinary and natural course, and carried down through said ditch and discharged upon plaintiff's lands, and by reason of such wrongful and unlawful diversion of such waters and their discharge upon said lands, such lands have been overflowed, inundated, washed and injured, and will continue to be so overflowed and inundated, and totally and permanently injured and damaged.

W. T. Magness alleged in his complaint damage to his crops for the year 1906 in the sum of $1,047.50. He and the other appellees, in addition to the damage to their lands, asked for other damages subsequent to the year 1906. But it is unnecessary to set out these.

The appellant answered, denying all the material allegations of the respective complaints, and setting up in each case the following defenses: "That, if plaintiff had suffered any damage whatever, such damage was caused by the act of parties other than defendant in interfering with the natural flow of water, and denied that there was any interference or diversion of the natural flow of waters by any act of the defendant;" also contributory negligence and the three years' statute of limitations.

W. T. Magness instituted his suit September 12, 1907; S. A. Moore instituted his suit April 21, 1908; and R. T. Magness instituted his suit October 1, 1908. There was a verdict and judgment in favor of W. T. Magness for $3,200, and in favor of R. T. Magness for $580, and in favor of S. A. Moore for $650. Appellant seeks by this appeal to reverse these several judgments.

Other facts stated in opinion.

*Kinsworthy & Rhoton, S. D. Campbell* and *Jas. H. Stevenson,* for appellant.

Appellant is not liable, if the diversion was necessary and skilfully made. 86 Ark. 91; 47 Ark. 340; *Id.* 33. To entitle complainant to relief, he must show that the defendant has committed a wrongful act to his injury. Farnham on Waters, § 492; 11 Pa. Super. Ct. 218; 76 Ark. 542; 38 Minn. 179; 8 Am. St. R. 656; 47 Conn. 269; 118 Ill. 487; 9 N. E. 203. Evidence objected to, should be ruled out, unless the pleadings are amended to conform thereto. 70 Ark. 232; 59 Ark. 165; 62 Ark. 431; 75 Ark. 181; 76 Ark. 468. For a deflection of surface water caused by a skilfully constructed roadbed, there is no liability. 60 Mo. 329; *Id.* 334; 78 Mo. 504; 83 Mo. 271; 53 Am. R. 581; 33 Ind. 274. One purchasing the land subsequent to the injury cannot recover damages for the injury. 39 Ill. 205.

*S. A. Moore, Ernest Neill* and *McCaleb & Reeder,* for appellees.

Flood water which overflows from a natural stream is not surface water. 44 Ark. 363. Where water has for several years been flowing in an artificial channel, a railroad, afterwards constructing its road, must treat it as the watercourse. 3 Farnham on Waters, § 827; 91 Va. 587; 10 L. R. A. (N. S.) 966. And if it diverts the water from such course, it is liable in damages for the injury. 57 Ark. 512; 78 Ark. 589; 87 Ark. 475. Defendant

had ·no right to obstruct the flow of water, and throw it upon plaintiff's land. 39 Ark. 463; 82 Ark. 447; 35 Ark. 622. Appellant is liable for failing to maintain proper openings in its roadbed through which the water could pass. 47 Ark. 340; 76 Ark. 548; 86 Ark. 406. Testimony as to the decreased value of the land was properly admitted. 51 Ark. 324; 86 Ark. 96; 76 Ark. 261; 67 Ark. 374. The nuisance complained of was of a permanent character, and should be fully compensated. 35 Ark. 623; 39 Ark. 463; 52 Ark. 240; 86 Ark 406. Where both parties direct their evidence to the same issue, a defective complaint will be considered as amended to conform to the proof. 54 Ark. 289; 59 Ark. 223. If particular use of property causes a nuisance, the injured party is entitled to relief. 159 Miss. 147; 122 N. Y. 18; 9 L. R. A. 711; 73 Ind. 268; 82 Mich. 471; 42 S. C. 402; 26 L. R. A. 694; 50 L. R. A. 488. Railroad companies are liable for damages caused by an overflow of surface water discharged through culverts. 71 Ill. 616; 25 Ill. App. 569; 62 S. C. 25; 39 S. E. 792; 98 Mass. 429; 126 Ala. 555; 28 So. 392; 70 Mo. 359; 35 Am. R. 431. So where a ditch cut by the company conducted the water to a culvert, and it overflowed the lands of plaintiff. 68 Mass. 760; 72 Miss. 881; 48 Am. St. R. 589; 16 So. 909; 85 Tex. 88; 19 S. W. 1025; 3 Penn. (Del.) 407; 54 Atl. 687; 114 Tenn. 579; 86 S. W. 1074; 80 Minn. 9; 82 N. W. 979; 118 Ill. 487; 9 N. E. 203; 94 Ind. 24; 50 Atl. 423.

Wood, J. (after stating the facts). The waters that flowed through the new channel of Thomas Creek as straightened by Powell—"Powell's Ditch," as it is often called in the evidence—were not surface waters, but waters of a well-defined stream that had been diverted into a new and different channel. Whether this diversion was ·caused primarily by appellant in obstructing the old channel, or by natural causes, or by Powell, is wholly immaterial in this case, because for at least four years the waters of this stream, at low stages and at flood tide, had passed over appellant's railroad in a certain course and had flowed out into other streams without doing any damage whatever to the lands of the appellees. In 1906 appellant obstructed and prevented the flow of these waters in the course they had been flowing over, through and across its roadbed by raising its embankment. Appellant also gathered these waters at the same time into a ditch

cut by it, and turned them in a direction where there were no sufficient natural or artificial outlets for them. As a direct consequence of this conduct of appellant, these waters overflowed the lands of appellees, who were lower proprietors, along the course they were compelled to flow after their obstruction and diversion as above mentioned. These facts are established by the uncontroverted evidence.

The obstruction and diversion by appellant in the manner indicated were of a permanent nature, and necessarily injurious to the lands in the track of the inevitable overflow caused by them. Therefore, according to our cases (some very recent), the damages caused by the construction of the embankment and ditch were original, and could only be recovered by suit brought within three years from the time the embankment and ditch were completed. *St. Louis, I. M. & S. Ry. Co.* v. *Morris,* 35 Ark. 622; *Little Rock & F. S. Ry. Co.* v. *Chapman,* 39 Ark. 463; *St. Louis, I. M. & S. Ry. Co.* v. *Biggs,* 52 Ark. 240; *Turner* v. *Overton,* 86 Ark. 406; *Barton* v. *Board of Directors, St. Francis Levee Dist.,* 92 Ark. 406; *Kelly* v. *K. C. S. Ry Co.,* 92 Ark. 465.

But the undisputed evidence shows that Powell did not divert the new channel of Thomas Creek. It had formed a channel for itself, and he only "straightened it out" in places, and "channeled it through" in the course it had taken. The "little ditch" he cut did not make any "particular difference" in the amount of water that went down to the railroad. The testimony of Powell himself, and of the other witnesses of appellant, makes it clear beyond controversy that Powell did not by his ditch change the new channel of Thomas Creek so that the water passed over appellant's railroad in any manner different from what it would have done had he not cut the ditch. Therefore, the diverted waters from the old creek bed having cut out a new and well-established channel in which they had flowed for several years to the railroad, the appellant could not obstruct and divert this flow in a manner to cause injury to others. The way these diverted waters from the old channel of Thomas Creek passed out over the roadbed of appellant, under the evidence, was the usual and natural course for such waters. They were evidently flowing that way because nature caused them to so flow. Even if Powell assisted, they had cut and were cutting their channel

in that direction, and he was only aiding nature. It is not claimed or shown that Powell cut his ditch so as to divert the waters from the general course they had already taken. Many cases of this court recognize the doctrine that the waters of a stream in their natural flow can not be obstructed or diverted so as to damage the lands of another. One who does so is liable for the damage thus wrought. *Railway Company* v. *Lyman,* 57 Ark. 512; *Railway Company* v. *Cook,* 57 Ark. 387; *St. Louis, I. M. & S. Ry. Co.* v. *Saunders,* 78 Ark. 589; *St. Louis, I. M. & S. Ry. Co.* v. *Hardie,* 87 Ark. 475; *St. Louis, I. M. & S. Ry. Co.* v. *Walker,* 89 Ark. 556.

Even if these waters had been nothing more than surface waters, appellant could not gather them into its ditch and cast them in a body upon the lands of appellees. This was practically the effect of appellant's ditch. For the evidence shows that when the waters of Thomas Creek were by this means added to the waters that usually passed through other lower natural and artificial drains, these drains were insufficient to carry them off, so they passed on over and overwhelmed appellees' lands. One of the experts testified: "Digging a ditch along the right of way and north of the railroad down to Newark would make it run more than ever towards the east and would turn the water on the Magness lands."

Mr. Farnham says: "The rule which prevents a railroad company from casting water in a body into lower proprietors deprives it of the right to place a culvert in its embankment which will carry the water which has accumulated on the upper side out of its course and cast it onto the property on the lower side. But there is no liability for continuing the drainage along its natural course, after the water has begun to flow in a definite channel. And, if the water is conducted to its natural outlet, the fact that, for a portion of the distance, the channel is changed, is immaterial." 3 Farnham on Water and Water Rights, § 909, p. 2675.

The natural outlet for these waters was Mud Creek. The natural course, and the course they were pursuing when diverted, by appellant, was south and southeast. Appellant's ditch turned them almost due east and entirely out of their natural course. True, the evidence showed that the lands were lower

from the point of diversion north of appellant's roadbed toward the east than to the west where was the trestle and opening for the old channel. But it does not show that the lands east were lower than the lands immediately south and southeast of the track, the direction in which these waters were already flowing. These lands immediately south and southeast were bottoms, and it does not appear that any damage would have been done to lower proprietors by proper and skilful trestling and letting them pass on in that direction. Under the undisputed evidence, this was appellant's duty, whether the waters were surface or not. *Little Rock & F. S. Ry. Co.* v. *Chapman,* 39 Ark. 463; *Bentonville Railroad* v. *Baker,* 45 Ark. 252; *Springfield & M. Ry. Co.* v. *Henry,* 44 Ark. 360; *Little Rock & F. S. Ry. Co.* v. *Wallis,* 82 Ark. 447; See also *St. Louis, I. M. & S. Ry. Co.* v. *Morris,* 35 Ark. 622; *St. Louis, I. M. & S. Ry. Co.* v. *Harris,* 47 Ark. 340; *St. Louis S. W. Ry. Co.* v. *Harris,* 76 Ark. 548; *Turner* v. *Overton,* 86 Ark. 406.

The charge of the court was in conformity with the law as above announced. It could serve no useful purpose to review its rulings upon the several prayers granted and refused.

Among the rejected prayers was the following: "19. As to the suit of S. A. Moore against the defendant, if the plaintiff purchased the lands in question in his suit after the Powell ditch had been dug, and knowing or having full opportunity to know of the construction of that ditch and of its probable effect as to the flow of water, in that event the plaintiff cannot recover, even though you should find that there has been damage to his lands resulting from a cause existing prior to his purchase of the lands."

There was no error in refusing to grant the above prayer. Appellee, Moore, purchased his lands July 5, 1904, as he alleged and as appellant concedes. Moore thus acquired the lands two years before appellant created the obstruction and diversion, and the resultant injury and damage to his lands for which he sued. He was the holder of the title when appellant caused the damage to his lands, and is entitled to recover therefor.

Witness Bone testified: "There was a cattle guard between culvert where Thomas Creek crosses railroad a half mile west of Newark and town of Newark, and this cattle guard was at

one time open, but is now closed." The allegation of the complaint is that appellant "changed the natural course of said creek by filling the openings or trestles through which said creek had always passed," and that by reason of the raising of its track and embankment the waters were diverted, etc. In view of these allegations, the above testimony was relevant to the issues and properly admitted.

The testimony of Ratton as to the effect of the overflow after the diversion of the waters of Thomas Creek was admissible. This testimony tended to show that the overflows that damaged appellees' lands were caused by the diversion of the waters of Thomas Creek.

The hypothetical question asked certain witnesses for appellees was proper. The witnesses who were asked the question qualified themselves to answer the question by showing their familiarity with the lands and the conditions surrounding them before and after the waters of Thomas Creek were diverted by appellant. The evidence that the question elicited tended to establish the correct measure of damages in such cases. *Railway v. Combs*, 51 Ark. 324; *St. Louis, I. M. & S. Ry. Co.* v. *Ayres*, 67 Ark. 374; *Little Rock & F. S. Ry. Co.* v. *Evans*, 76 Ark. 261. Almost the identical question was propounded in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Brooksher*, 86 Ark. 91, and was approved by this court. The difference between the facts of that and this case do not call for any difference in the ruling upon the question here presented. The rule of law in conformity with the hypothetical question and the facts established by it is correctly declared by the court in instruction number 4, requested by appellees.* (Reporter set forth in note.) This is the true rule for the measure of damages in such cases. See cases last above cited.

---

*The hypothetical question referred to in the opinion was as follows: "Taking the actual value of the lands of plaintiffs claimed to have been damaged at the completion of the digging of defendant's ditch and raising of its (defendant's) roadbed, and supposing the consequences to be known at that time, and comparing with what the value would have been if the flow had remained as formerly, and fixing your damage at the difference, what do you think would be the damage to the land?"

Instruction No. 4, requested by appellees, is as follows:

"4. If you find for plaintiffs in this case, then in assessing their damages it would be your duty to take and consider the actual value of their

The court refused to permit counsel for appellant on cross-examination to ask witness W. T. Magness: "How much did you assess these lands for at last assessing time as to their value?" During the examination of witness W. T. Magness, on cross-examination the following occurred between the court and counsel for appellant: By defendant's counsel: "Mr. Magness has stated he made a statement to the assessor as to the value of these lands." By the court: "No, he didn't; he stated he sent his tax receipts. I am trying to hold the law just as the courts have held it. Don't try to put anything in that isn't the law." By defendant's counsel: "I am not, your Honor." By the court: "It looks like it." By counsel for defendant: "I asked Mr. Magness if he had made a statement himself as to valuation of his lands to the assessor. Your Honor ruled that out, and Judge McCaleb (of plaintiffs' counsel) requested you to change that ruling and let him state that. In answer to that Mr. Magness stated he had at some time." By the court: "I am willing for all legitimate testimony to be brought in, but don't want the time of the court taken up and cases padded with what is not legitimate."

The court did not err in refusing to permit Magness to answer the question propounded. Valuations by the assessor were not evidence of the value of these lands before or after the alleged damage to them by appellant. *Texas & St. L. Ry. Co.* v. *Eddy,* 42 Ark. 527; *Springfield & M. Ry* v. *Rhea,* 44 Ark. 258.

The remarks of the court in the colloquy with counsel for appellant were not such as to create a prejudice in the minds of any sensible jury against the rights of appellant. The court in its fourth instruction limited the damages to injury sustained to the lands. The evidence was ample to sustain the verdict, and the judgments based thereon are correct. They are therefore affirmed.

lands in controversy at the time the work was completed, supposing the consequences to be known, compare it with what the value would have been if the overflow on said lands had remained as formerly, without the waters of Thomas Creek being diverted upon said lands, and the difference in the value of each of said tracts would be the measure of damages in each case."