ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.*

HARDIE.

Opinion delivered October 5, 1908.

1. RAILROADS—CONVEYANCE OF RIGHT-OF-WAY—CONSTRUCTION.—A deed conveying a right-of-way to a railway company, which stipulates "that all drains, both natural and artificial, shall be so bridged or protected by culverts that the flow of water from said lands and lands adjacent shall be in no wise impeded or restricted," contemplates that the railway company, and not the grantor, should so maintain bridges and culverts that the natural flow of water should not be obstructed or impeded. (Page 480.)

2. SAME—OBSTRUCTION OF SURFACE WATER.—Independently of contract, a railway company is liable for any damages caused in the construction of its roadbed by the filling up of drains and culverts when at a reasonable expense it might have left them open. (Page 480.)

3. SAME—INSTRUCTION—GENERAL OBJECTION.—Where the court instructed the jury that in determining the damages for destruction of a crop by obstructing the flow of surface water they should consider the loss of rental value of cleared land that plaintiff was unable to

cultivate, the extra cost of planting and working the crop, less the extra cost he would have incurred in gathering and working so much of the yield as was lost, and the cost of reclearing the land caused by being forced to let it remain uncultivated, a general objection was insufficient to point out the objection that the instruction permitted the jury to allow double damages for the destruction of a crop. (Page 480.)

4. SAME—EVIDENCE.—Where, in an action against a railway company for injury to a crop by obstructing the flow of surface water, a witness had testified what amount of cotton the damaged land produced, it was not error to permit him to testify what an equal area of adjacent land of similar soil produced the same year when cultivated by him in the same manner as plaintiff's overflowed land. (Page 482.)

5. LANDOWNER AND CROPPER—TITLE TO CROP.—A contract between a landowner and share cropper is one of employment merely, and not a lease of land, and the landowner is entitled to recover damages to the crop growing out of an overflow caused by a railway company obstructing the flow of surface water therefrom. (Page 483.)

Appeal from Chicot Circuit Court; *Henry W. Wells,* Judge; affirmed.

### STATEMENT BY THE COURT.

This is a suit by Wm. T. Hardie against the St. Louis, Iron Mountain & Southern Railway Company. The substance of the complaint is as follows: That the defendant company constructed an additional line of railway in Chicot County, in 1903, over certain lands of plaintiff (giving course and direction of said line) for a distance of three and one-fourth miles, more or less. That plaintiff by deed conveyed the right of way to 'defendant over said lands, on consideration that said railway should be constructed in such manner that all drains, natural or artificial, should be so bridged or protected by culverts that the flow of water from said lands and the lands adjacent thereto should in no way be impeded or restricted. (A copy of said deed is filed as "Exhibit A" to the complaint.) That during the years 1904, 1905 and 1906 he was in possession of certain lands in Chicot County (described in detail) known as the Macon Lake Plantation, consisting of 6,000 acres, and four other plantations, containing respectively 400, 400, 200 and 480 acres. That by the topography of said lands the natural drainage for surface water on all of said land east of the defendant's railroad is west-

ward from the bank of Bayou Macon on the north and Macon
Lake on the east, across the line of said railway, into the natural
bayous on the west, thence into Bayou Macon on the south.
That the natural dainage from certain other described lands is
east across said railroad, with other waters from the east of
same. That prior to the building of said railroad defendant
(plaintiff) had constructed artificial drainage to assist said nat-
ural drainage by a complete system of ditches connecting with
a "mother ditch" (describing same). That, in building said ad-
ditional line of railroad, defendant caused to be thrown up a
dump or levee the entire distance over the land of plaintiff, be-
fore described, and down the channel and across the "mother
ditch" and five other ditches and across the natural drainings of
said lands; and had negligently failed to provide sufficient open-
ings through said dump or levee to admit the flow of surface
water through same from sixteen acres of the lands (describing
same) of plaintiff lying east of said railroad and 200 acres
lying west of said railroad, which are dependent for drainage
on said "mother ditch." That during the years 1904, 1905 and
1906 the defendant, over the protest of plaintiff, carelessly, neg-
ligently and willfully maintained its roadbed, so carelessly and
negligently constructed as aforesaid, so as to cut off the drain-
age of said lands, though often promising plaintiff to make such
openings as were necessary. That same would have been easily
made and at small expense. That, by reason of said failure,
the defendant caused the surface water during the years 1904,
1905 and 1906 to back and dam up for a great portion of the
year over said lands (describing them), and over 300 acres there-
of, and thereby retarded the growth and increased the cost of
cultivation and gathering and lowered the yield of a large cot-
ton crop, to-wit: 500 acres (describing same); 100 acres (de-
scribing same) and 200 acres (describing same), to the damage
of plaintiff in the sum of $12,000. Prayer for judgment in said
amount.

The defendant filed its answer, denying all the material alle-
gations of the complaint.

Testimony was adduced by the plaintiff to sustain the alle-
gations of his complaint, and by the defendant to sustain its

defense. The questions involved render it unnecessary to further state the evidence, except such comments as may be made in the opinion. There was a jury trial, and a verdict for plaintiff in the sum of $2,000, and defendant has appealed.

*Campbell & Stevenson, T. M. Mehaffy* and *J. E. Williams,* for appellant.

1. No breach of contract by the appellant is shown. Under the covenants in the two deeds there was no undertaking on its part to keep the bridges, ditches, etc., cleaned out and unobstructed, and it performed its contract when it bridged and protected the drains and provided culverts and other drainage facilities. There is no proof that these facilities were inadequate.

2. If all the evidence does not afford the correct basis for fixing appellee's damages, it is inadmissible, and he has failed to establish his damages by any competent evidence. The measure of damages to a crop, caused by negligence occasioning the overflow, is the value of the crop at the time of its destruction, with interest. If that value cannot be shown, the rental value of the land is the proper measure of damages. In determining the value of the crop at the time of destruction, its probable value at maturity may be considered, if it is shown that it would probably have matured but for the alleged negligence. In the absence of a showing that it would have matured, or might reasonably have been expected to mature, it is improper to admit evidence of the probable matured value of the crop. Where it is reasonably certain when a crop is planted that it will be overflowed and lost, its value is not recoverable as damages for such overflowing, but only the loss of rents and the damage to the land itself. 56 Ark. 612; 4 Sutherland, Dam. § 1023; 57 Ark. 512; 21 L. R. A. 608.

3. The opinions of the witness Daniel were inadmissible. The facts as to character of the lands, amount of labor used and weather conditions should have gone to the jury, and not his opinion. True, he could, say the land was similarly cultivated and of similar area to that cultivated by him, but when he stated that the two tracts were themselves similar, he merely expressed an opinion.

4. The court erred in giving plaintiff's instruction No. 2, and so much of No. 1 as relates to the right of plaintiff to recover the entire value of the crop. Under the evidence Hardie and his croppers were partners or tenants in common. 56 Ark. 436. And he was entitled to sue for only his share of the crop.

5. The court erred in its charge to the jury as to the measure of damages. Correct rule stated *supra*.

*Baldy Vinson,* for appellee.

1. There being evidence in the record that there was both negligence on the part of appellant and damage to appellee by reason thereof, these two questions are settled by the jury's verdict. 85 Ark. 193; 78 Ark. 594.

2. The language of the deed is susceptible of no other construction than that the bridges and culverts should remain in such condition that the flow of water should not be impeded. So soon as the bridges and culverts were not so maintained, just that soon the drains would not be so bridged and protected by culverts that the flow of water would be unimpeded. Independent of the contract, the law imposes the duty upon appellant to maintain its bridges so as not to interfere with the natural flow of the water. 80 Ark. 235.

3. The objection to Daniels's testimony that certain land cultivated by him was similar to the land that was damaged by water is without merit. He fully qualified himself to render the testimony he did by showing long experience as a farmer, and long familiarity with the lands in this locality.

4. It is true that the condition of the bridges was readily observable by appellee; but if it was not observed by appellant; that is conclusive evidence of negligence on its part, for that was its duty, both under the law and the special contract. 39 Ark. 463; 57 Ark. 387; 66 Ark. 271; 80 Ark. 235; 82 Ark. 447.

5. There is no error in instruction No. 2 and so much of No. 1 as relates to the right of appellee to recover for the whole value of the crop. The facts clearly establish the relation of employer and laborer between Hardie and his croppers. 32 Ark. 435; 34 Ark. 179; 34 Ark. 687; 62 Ark. 133.

6. The instruction as to measure of damages was correct.

HART, J. (after stating the facts). The following special propositions are urged to reverse the judgment:

· First. That the damage to plaintiff's crops was caused by the obstructed condition of the drains and culverts; that, by the terms of its right of way deed from the plaintiff, defendant was not bound to maintain the drains and culverts across its right of way free from obstruction, but that it was plaintiff's duty to keep them open. The clause of the deed referred to is as follows: "It is further expressly understood and agreed   *   *   *   *   that all drains, both natural and artificial, shall be so bridged or protected by culverts that the flow of water from said lands and lands adjacent shall be in nowise impeded or restricted." Clearly, the language of the deed contemplates that the railroad company should maintain its bridges or culverts so that the natural flow of the water should not be obstructed or impeded. Obviously, the railroad company never intended to give up any part of its control over its roadbed, for such a course would not only tend to hinder it in the operation of its trains, but would endanger the lives of its employees and passengers.

Moreover, independent of any contract, the duty of maintaining its culverts so as not to impede the free passage of the surface water was cast upon the defendant. The drains and culverts were allowed to fill up and become obstructed by the falling of dirt when the defendant was raising its roadbed, and they could have been cleaned out at a reasonable expense. This rule was announced in the case of *Little Rock & Ft. Smith Ry. Co.* v. *Chapman,* 39 Ark. 463, and has been followed by the court ever since. A citation of only a few of the later cases is necessary. *Baker* v. *Allen,* 66 Ark. 271; *Chicago, Rock Island & Pacific Ry. Co.* v. *McCutchen,* 80 Ark. 235; *Little Rock & Ft. Smith Ry. Co.* v. *Wallis,* 82 Ark. 447.

The allegations of the complaint are sufficient to sustain an action for damages, aside from the liability imposed by the contract, and the measure of damages would be the same whether the action is founded on the contract or on the liability of the railroad independent as announced in the Chapman and other cases *supra.*

Second. That the court did not correctly instruct the jury as

to the measure of damages. The instruction given by the court on that point at request of the plaintiff is as follows:

"You are further instructed that if you find from a preponderance of the evidence that defendant was guilty of negligence in maintaining its roadbed, and thereby obstructed the natural drainage of the surface water from plaintiff's land and caused them to dam up against said roadbed and flow back over plaintiff's land and damaged or prevented making crops thereon, your verdict will be for plaintiff for such actual damages as the evidence shows he sustained during the years 1904, 1905 and 1906 as was the result and solely due to the negligence of the defendant, with interest thereon from the time such damage occurred; and in arriving at the amount of damages from the evidence you will take into consideration the loss of rental value of the cleared land that he was unable to cultivate; the extra cost of planting and working his crop, less the extra cost he would have been to in gathering and working so much of the yield as was lost; the cost of reclearing land caused to have grown up by being forced to lie out as the result of such negligence; and, after finding the sum of such losses for the years 1904, 1905 and 1906 as the evidence convinces you that plaintiff has sustained, and the interest on the same from the time such losses occurred at six per cent. per annum, you will return into court written on the complaint a verdict for plaintiff and assess his damages at that sum."

At the request of the defendant the court gave the following instruction on the measure of damages:

"15. If you should find for the plaintiff, you should assess such amount of damages as you find he has actually sustained as the necessary result of defendant's negligence, and the measure of his damages would be the cash value of the crops at the time they were destroyed, provided you find such destruction as alleged. And, in arriving at the measure of the value of his crop alleged to have been destroyed, you may take into consideration the fertility of the soil upon which they were growing, the state of their cultivation, their condition at the time of destruction, the favorable or unfavorable season following for the maturity of the crop with their probable yield; you will also take into con-

87—16

sideration further expense of cultivation, if any further cultivation was needed, the additional expense of gathering and marketing them, and also the impending hazard or peril of weather and storms between the times they were destroyed or injured and the close of the season for maturing and gathering the same."

Appellant railway company urges that the instruction given by the court at the instance of the plaintiff allows double damages. In other words, that it directs the jury to find for the damages of the cleared land that appellee was unable to cultivate, its rental value, and also the extra cost of planting and working it.

The different elements of damages were correctly stated in the instruction of which complaint is made. It is true that the naming of all of the elements of damage in one instruction may have caused confusion in the minds of the jury and thus have influenced it to apply an element of damage to a class of lands to which it was not applicable, but we do not think such was the result.

The testimony introduced, the instruction given on the measure of damages at the instance of the defendant, now appellant, and the whole conduct of the trial as disclosed by the record, show that the case was tried on the theory that the damages to the crop were its actual value, where it had matured sufficiently to have a market value at the time of its destruction, and that on the cleared land which could not be cultivated the damages were limited to its rental value. There was an evident intention to follow the rule laid down in the case of *Railway Company* v. *Yarborough,* 56 Ark. 612, and the later cases of *St. Louis Southwestern Ry. Co.* v. *Morris,* 76 Ark. 542; *Little Rock & Ft. Smith Ry. Co.* v. *Wallis,* 82 Ark. 447, and *St. Louis, I. M. & S. Ry. Co.* v. *Saunders,* 85 Ark. 111.

Appellant's counsel must have known the meaning the court intended to convey by the instruction, and, instead of making a general objection, should have requested a specific instruction which would have eliminated the fault. *St. Louis, I. M. & S. Ry. Co.* v. *Hoshall,* 82 Ark. 387; *St. Louis, I. M. & S. Ry. Co.* v. *Barnett,* 65 Ark. 255.

Third.   Counsel for appellant asks for a reversal of the

judgment because, in ascertaining the value of the damaged crop, Daniel, the manager of the plantation, was permitted to answer the following question:

"Did you have a similar piece of land, similarly situated, similarly cultivated, similar area, that you cultivated in 1905?"

It is claimed that this was permitting Daniels to give his opinion to the jury as to what the damaged lands would have produced, and as to what tracts were similar. Daniels had already testified what amount of cotton and of cotton seed the damaged land produced. His answer to the question and to those of similar import shows that he simply stated to the jury what an equal area of adjoining land of similar quality of soil produced the same year when cultivated by him in the same manner as the overflowed land. The jury were left free to determine whether the negligence of the railroad caused the difference in production and how much of it was caused thereby. The facts were stated to the jury, and under the instruction of the court they were left to draw their own inferences.

Fourth. Counsel for appellant also asks a reversal on account of the second instruction, which is as follows: "No. 2. The jury are instructed that if they believe from the evidence that the parties working the land, claimed to have been damaged, were share hands working for a proportion of the crop, and no part of it belonged to the parties working the land but to the plaintiff, then he is entitled to recover the entire damage and not the share hands; that the share hands were not the owners." Daniels was the only witness who testified on that point, and we quote from his testimony as follows:

"Q. I want you to explain just what kind of a contract you have with your hands—whether or not you actually rent any land.

"A. I don't rent any land at all. I furnish the hands to make the crop. When the crop is gathered and ginned, I get one-fourth, and their provision and supplies come out of their part.

"Q. Have you any other kind?

"A. Some work on the halves under the same contract."

This testimony shows that the owner did not intend to rent the land, and, taken in connection with his other testimony, shows

that the owner had control of the land, and that the other parties were merely hired to make the crop. *Hammock* v. *Creekmore,* 48 Ark. 264; *Tinsley* v. *Craige,* 54 Ark. 346.

The witness Daniels made a detailed statement of the amount of damage suffered, and it is sufficient to say that his testimony warranted the verdict.

Finding no reversible error in the record, the judgment is affirmed.