KELLY *v.* KANSAS CITY SOUTHERN RAILWAY COMPANY.

Opinion delivered December 6, 1909.

1. RAILROADS—GRANT OF RIGHT OF WAY—OBSTRUCTION OF DRAINAGE.—The grant of a right of way to a railroad company does not authorize the company to obstruct the natural drainage of, and to overflow, the adjoining land of the grantor by the unskilful and unnecessary manner of the construction of the roadbed.   (Page 468.)

2. LIMITATION OF ACTIONS—OBSTRUCTION OF DRAINAGE.—Where the roadbed of a railroad was originally constructed so that it did not obstruct the natural flow of surface water, but subsequently a ditch was filled up so as to cause the flow of surface water to be cast back upon the land of an upper proprietor, the cause of action began when the ditch was filled up, and was original and susceptible of immediate estimation.   (Page 469.)

3. SAME—NECESSITY OF PLEA.—The statute of limitations must be pleaded at law and sustained by evidence, and cannot be aided by the allegations in the complaint.   (Page 471.)

4. SAME—DAMAGE TO LAND.—Kirby's Digest, § 5064, providing that actions for trespass on lands shall be brought within three years, applies to an action for an injury to land by obstructing the drainage of surface water.   (Page 471.)

Appeal from Sevier Circuit Court; *James S. Steel,* Judge; reversed.

*J. S. Lake,* for appellant.

It was appellee's duty, independent of contract, to maintain its culverts so as not to impede the free passage of surface water. 87 Ark. 480; 39 Ark. 463; 82 Ark. 447; 80 Ark. 235; 45 Ark. 252; 44 Ark. 360; *Id.* 258; 66 Ark. 271.   The nuisance was not of a permanent character, within the sense that the statute of limitations begins to run from the date of construction.   52 Ark. 240; 57 Ark. 387; 72 Ark. 127; 76 Ark. 542; 80 Ark. 235; 82 Ark. 387; 86 Ark. 406.

*Read & McDonough,* for appellee.

The statute, after once commencing to run, cannot be stopped by death of the owner or minority of appellants.   31 Ark. 364; 52 Ark. 132.   The injury was permnanent in the beginning, and the statute began to run at that time.   66 Ark. 271; 87 Ark. 475; 86 Ark. 406; 71 Ark. 78; *Id.* 451; 44 Ark. 258; 62 Ark. 360; 45 Ark. 252; 82 Ark. 453.   A person making an

artificial ditch is not bound to keep it open.  21 Ill. App. 560.
One is not bound to ditch the land of another.  29 N. Y. 459.

FRAUENTHAL, J.  This is an action instituted by the appellants to recover damages which they claim to have sustained by reason of the obstruction of the natural drainage and flow of water over their land by the appellee in making an embankment in and filling up a ditch that had been dug along the appellant's roadbed.  The plaintiffs below are the widow and minor children of Eli Harris, who was the owner of forty acres of land in Sevier County, which he occupied as his homestead to the date of his death.  In 1896 he granted to the predecessor of the defendant railroad company a right of way for its railroad over said land, and in 1897 that company built its roadbed across the eastern portion of said land, running from north to south.  The natural and usual flow of the water over this land, and the lands just north of it, was and had been from the northwest and towards the railroad embankment built by the defendant; so that, ordinarily, this roadbed would have obstructed the natural flow of the water which had been used to pass over this land.  In the construction of its roadbed the railroad company dug borrow pits upon its right of way and upon the west side of the railroad embankment, and the connections were dug out between the borrow pits so as to make a ditch along the western side of the railroad and entirely across this land from north to south.  This ditch was from two to five feet deep and from fifteen to twenty feet wide; and it drained all the land of the plaintiffs, of which complaint is now made, from the time of the construction of the railroad to the date which will be hereafter referred to, when the ditch was permanently filled up and became a part of the embankment.  During all that time there was no obstruction to the flow of the water which passed over the portion of plaintiffs' land, now complained of.  It is urged by the defendant that no ditch was dug along the side of the railroad by it, but that borrow pits were only dug by it; and that the defendant did not assume to provide an escape for the water by a ditch.  But the evidence shows that these borrow pits were connected by drains, and that in effect they then formed practically a continuous ditch, which did successfully carry off all the water which had been theretofore used

to flow over the land. They did therefore, up to the time of the filling of the ditch, provide for the passage of the water, so that it did not injure the land involved in this case. In 1901 Eli Harris departed this life, leaving surviving him a widow and four minor children, who are the plaintiffs, and also two adult children. On January 2, 1909, the plaintiffs instituted this suit, and in their complaint alleged that in the spring of 1905 the defendant filled up said ditch, and thus obstructed the natural flow of the water and cast the same back on the land of plaintiffs, and "that the said ditch has continuously been and remained obstructed and stopped up since the spring of 1905." It appears from the evidence that this ditch was filled up by the accumulation of sediment and by the defendant throwing dirt into the ditch until there was formed a solid embankment where the ditch formerly ran across this land which was raised to a height of from one to two feet above the adjoining land upon the west, and became in effect a part and an extension in width of the railroad embankment. And the ditch was thus permanently filled up along the entire length of plaintiffs' land. There is a conflict in the testimony as to the time when the ditch was thus filled up and the embankment made therein. Some of the witnesses on the part of the plaintiffs testified that this was done two years before the institution of this suit, and others testified that it was done from three to four years prior to the date of the trial, which would have been from 2½ to 3½ years prior to the institution of this suit. The waters that had been theretofore drained by this ditch were cast back upon the plaintiffs' land by this embankment made therein; and the plaintiffs alleged that on this account they were unable to produce any crop on twenty acres of the land during 1906, 1907 and 1908, and they also alleged that two acres of the land were permanently injured by reason of a gully that was washed therein, and they sought to recover the rental value of the twenty acres for said three years and the value of said two acres. The defendant denied all liability for the alleged injury, and specifically pleaded the statute of limitation against any recovery. At the conclusion of the evidence the court directed the jury to return a verdict in favor of the defendant, which was done; and the plaintiffs prosecute this appeal.

There was sufficient evidence, we think, adduced in this case to go to the jury, which showed that the natural flow of the water which used to pass over the lands of the plaintiffs was obstructed by the defendant; and the question involved is, when did that obstruction occur which gave a cause of action; and if the obstruction occurred when the ditch was filled up, whether it was permanent or temporary. It is contended by the defendant that the obstruction occurred in 1897 when the railroad bed was originally constructed, and that it was permanent, and that the injury was then complete, and that the cause of action, if any arose, then accrued for all damages that were or could have been incurred. But, under the evidence in this case, when the defendant originally built its road embankment, it did not obstruct the natural flow of the water that passed over the plaintiffs' land, and therefore did not commit any injury thereby. By virtue of the grant given to it of a right of way over the land it had the legal right to construct its embankment thereon. This acquisition of a right of way did not, however, give to the railroad company the right to obstruct the natural drainage and to overflow the land of the adjoining and granting owner by the unskilful and unnecessary manner of the construction of the roadbed. *St. Louis, I. M. & S. Ry. Co.* v. *Morris,* 35 Ark. 622; *St. Louis, I. M. & S. Ry. Co.* v. *Anderson,* 62 Ark. 360. It still owed the duty to such owner not to construct its railroad embankment in an unskilful and negligent manner; and where it impeded or obstructed the natural drainage or flow of the water, it was still its duty to carry off such water by placing culverts or trestles across the embankment or by making ditches along its sides. If a railroad company attempts to alter the course of the natural drainage of a tract of land, it must provide sufficient means for the escape of the flow of such water. If the railroad company attempts to gather up the water into ditches, it is bound to care for it so that it will not do an injury to an abutting owner. In the case of *Little Rock & F. S. Ry. Co.* v. *Chapman,* 39 Ark. 463, it was held that "a railroad company has no right in the use of its right of way to injure the lands of upper proprietors by flooding them with surface water which had been used to pass over the right of way, when, by reasonable care and expense, it might, consistently with the

enjoyment of the right of way, leave a free passage for the water."

The wrong, however, does not consist in gathering the water or in diverting it from its natural course; but the wrong is done by obstructing the natural flow of the water and casting it upon the adjoining owner to his injury. If the embankment is constructed carefully and skilfully, so that it does not obstruct the natural flow of the water, and does not cast it back on the adjoining owner, but sufficiently provides for the escape of the water, then there is no injury done to the upper proprietor, and no cause of action arises. 3 Farnham on Waters and Water Rights, pp. 2660-2663.

The cause of action arises when, from the manner of the construction of the embankment, the free passage of the water is necessarily impeded and cast back upon the complaining owner; and if in the manner of the construction of the embankment this does not necessarily result, then no wrong has been done to, and no injury sustained by, and no cause of action would accrue to, such owner. 3 Farnham on Waters and Water Rights, p. 2574; *Mitchell* v. *N. Y., L. E. & W. R. Co.*, 36 Hun, 177; *St. Louis, I. M. & S. Ry. Co.* v. *Hardie*, 87 Ark. 475.

In the construction of its railroad embankment in 1897 the defendant made a ditch which carried off all the waters that were used to pass over the plaintiffs' land towards this embankment. The railroad company did not then obstruct the natural flow of this water and did not therefore injure this land. On the contrary, in the performance of its legal duty it exercised due care in providing a passage for the escape of these waters at that time. No cause of action therefore accrued to the owner of this land in 1897, and the statute of limitation was not then put in motion; nor did it begin to run until the ditch was filled up.

But when the ditch was filled up, the natural flow of the water over the plaintiffs' land was necessarily impeded and cast back on the land. Then a wrong was done to the owners of the land and an injury at once suffered; and then a cause of action accrued. The evidence in this case shows that the obstruction made in the manner in which this ditch was filled up was permanent and not temporary. The ditch was not only

filled up by sediment but the defendant cast dirt therein until an embankment was made where the ditch formerly was, and this embankment was raised several feet higher than the adjoining land. The ditch was not filled up in places only, but it was thus filled up along its entire length across the plaintiffs' land, and became a permanent part of or addition to the railroad bed. The damage thus done at the time of the filling up of this ditch was original, and should be fully compensated in one action for the injury to the land. In *St. Louis, I. M. & S. Ry. Co.* v *Biggs,* 52 Ark. 240, this court said: "Whenever the nuisance is of a permanent character, and its construction and continuance are necessarily an injury, the damage is original, and may be at once fully compensated. In such case the statute of limitation begins to run upon the construction of the nuisance." In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Anderson,* 62 Ark. 360, it is said: "So in this case the obstruction of the ditch was permanent; that is, it will continue without change from any cause except human labor. The effect of it was to restore the drained land to the condition in which it was before the ditch was dug. Its present and future effect upon the land could be ascertained with reasonable certainty. The damage was original and susceptible of immediate estimation. No lapse of time was necessary to develope it. It was the difference between the value of the land as it would have been with the ditch open, and the value of it with the ditch closed. As the law does not favor the multiplicity of suits, and all damages which will be sustained as the necessary result of the filling of the ditch in question, and are recoverable, could have been estimated at the time of such obstruction, from the effect of it upon the value of the land, only one action should be brought therefor, and that within three years after the ditch was closed."

In the recent case of *Board of Directors St. Francis Levee District* v. *Barton,* ante p. 406, Chief Justice McCULLOCH says: "This court has repeatedly held in cases where obstructions to drainage were total and permanent, such as by the building of a solid embankment across a drain, either natural or artificial, that the damage is original, and must be fully compensated in one action." *St. Louis, I. M. & S. Ry. Co.* v. *Morris,* 35 Ark. 622; *Turner* v. *Overton,* 86 Ark. 406.

In the case at bar a solid embankment was in effect made in the ditch and raised above the adjoining land, and the obstruction to drainage caused by it was total and permanent.

The damage thereby caused was then original, and should be fully compensated in one action. The statute of limitation began to run against this cause of action from the time the ditch was thus totally obstructed.

In the complaint it is alleged that this obstruction was made in the spring of 1905. But the plea of the statute of limitation is an affirmative defense, and must be sustained by evidence, and is not, in an action at law, affected by the allegations in the complaint. The evidence on the part of plaintiff tended to prove that this obstruction was made within three years next before the commencement of this action. If the action was brought within that time, then the cause of action herein in favor of the adult plaintiffs was not barred; and we are of the opinion that there was sufficient evidence adduced upon which to submit that issue to the jury. But the cause of action in favor of the minor plaintiffs that accrued by reason of the damage to their interest in the land caused by this obstruction was not in any event barred. The statute of limitation that is applicable to this character of action is three years, and is provided for in sections 5064 of Kirby's Digest. But section 5075 of Kirby's Digest provides: . "If any person entitled to bring any action under any law of this State be at the time of the accrual of the cause of action under twenty-one years of age, or insane, or imprisoned beyond the limits of the State, such person shall be at liberty to bring such action within three years next after full age, or such disability shall be removed."

In as much as this cause must be remanded for a new trial, we deem it but proper to say that the plaintiffs have the right, if they are so advised, to amend their pleading so as to seek to recover those damages which under the law the injury shows they are entitled to.

The judgment of the lower court is reversed, and this cause is remanded for a new trial.