MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE,
v. NEAL.

4-8378                                      208 S. W. 2d 176

Opinion delivered February 9, 1948.

*Henry Donham* and *Thomas Harper,* for appellant.

*Partain, Agee & Partain,* for appellee.

HOLT, J.   On May 9, 1946, appellees filed four separate suits to recover damages to land and crops alleged to have resulted from overflows.   The suits, by agreement, were consolidated for trial.

Appellee, J. Neal, is the husband of appellee, Cary S. Neal.   The tract of land involved here consists of eighty acres and was owned by Cary S. Neal.   J. Neal, at the time of the alleged damages, was cultivating the tract as tenant.   Damages were sought by appellees to growing crops and permanent injury to the tract of land resulting from an overflow in 1943.   Appellees also sought damages for another overflow in 1945, which it was alleged resulted in damage to crops and injury to the tract of land in question.   It was alleged that the crops were

destroyed in each of the overflows and that the land was washed and permanently damaged by each overflow as a result of the negligent manner in which appellant had constructed and maintained its roadbed in that it failed to use proper care in providing sufficient openings and drains to permit overflow waters north of the roadbed to escape, thus damaging appellees' property.

Appellant answered all suits with a general denial and further pleaded as a bar to appellees' claims the three-year statute of limitations.

A jury awarded appellees, in separate verdicts, crop damages growing out of the 1945 flood in the amount of $3,000, and $1,000 for injury to the land, and for damages to crops growing out of the 1943 flood $2,000, and $1,000 for injury to the land, or a total of $7,000.

This appeal followed.

For reversal, appellant argues the insufficiency of the evidence and the three-year statute of limitations as a bar. It appears from the evidence that the roadbed of appellant, at the time of its construction on the north edge of appellees' property, contained two openings or drains to permit flood waters north of the embankment to escape to the south. One of these openings, in the nature of a 90-foot wood trestle, was filled in in 1923 and a 5 x 4 drain constructed under the roadbed to take its place, thus materially reducing the opening at this point. This 5 x 4 drain had not been changed up to the date of trial. The other drain or opening less than one quarter mile up the roadbed, following an unusual flood which overtopped the roadbed in 1933, was practically doubled in size, the size of the opening being increased from about 700 square feet to 1,400 square feet, and this latter opening had not been changed since 1933.

Up to this point, there is little, if any, dispute in the testimony.

There was substantial testimony that in 1943 flood waters, though not as high as in 1933, accumulated north of appellant's roadbed and on account of insufficient drains and openings in the roadbed, the water in passing

through these openings washed and permanently damaged appellees' eighty-acre tract of land and destroyed the crops growing thereon.

For this permanent damage to the land and destruction of the crops in 1943 appellees were entitled to recover for the reasons which we shall presently point out. (*Missouri Pacific Railroad Co., Baldwin, et al., Trustees, v. Kuykendall,* 193 Ark. 106, 97 S. W. 2d 620.) However, having once recovered permanent damages in a tort action against appellant, permanent damages to the same tract of land and loss of crops may not again be recovered for subsequent damages in 1945.

If a permanent obstruction to the flow of surface waters is erected an original action arises for the recovery of any damages. which thus ensue, or which must necessarily therefor ensue, and a single action may be maintained provided the nature and extent and certainty of future damages may be ascertained, admeasured and compensated, in which event there can be no recovery for a recurring damage from the same cause. In such an action the recovery is not only for the damages which had occurred, but for those which will reasonably occur, the occurrence of which will result in the depreciation of the value of the land, and for this reason, the measure of such damage is the difference in the value of the land before and after the erection of the obstruction.

If, therefore, there was a recovery in 1943 or in any other year for the permanent injury to the land, there cannot be a subsequent recovery for a recurring damage because the owner has been compensated for such damages by the recovery of this difference in value of the land, which difference in value was occasioned by the fact that not only had present damages been sustained when the suit was filed, but the reasonable certainty that subsequent damages would be sustained which would reduce the market value of the land.

Stated otherwise, the law is that if the erection of the obstruction, frequently referred to as a nuisance, is such that damage will result from its erection, a suit may be brought immediately upon the erection of the obstruc-

tion although the damages had not then been sustained. If, however, it is uncertain that damages may be sustained, or if so, that the extent and amount thereof may not then be ascertained and compensated, the suit need not be brought until there has been damage.

The law is that one may not first recover for permanent damages and thereafter recover for a recurring damage. If this may be done, the owner recovers twice for the same damage because a recovery for a permanent or original injury includes not only the damages which have then occurred, but also the future damages which will occur and reduce the value of the land.

Here, the owner has twice recovered compensation for the damages to the land, once for the 1943 overflow and again for the 1945 overflow. The following correct instruction was given on the measure of damages for the first overflow in 1943: "If you find for the plaintiff, Cary S. Neal, as to damages to her land in the year 1943, then she would be entitled to recover the difference, if any, between the fair market value, if any, of the lands so damaged immediately before and immediately after such damage, if any."

The proper measure of the damages was the diminished value of the land and this reduced value was occasioned not only by the certainty that an overflow had damaged the land, but a reasonable certainty that subsequent overflows would render it less valuable for the uses to which it was adapted. If there has been a recovery for the permanent damage to the land by the owner from the 1943 flood, neither the owner nor his tenant can recover for his subsequent crop damage because the reduced value of the land occasioned by the reasonable certainty that there would be future damages was compensated for the damages resulting from the 1943 overflow.

The rule is announced in 15 Amer. Jur., under Damages, § 25, p. 417, as follows: "If an injury to realty is permanent in character, all the damages caused thereby, whether past, present, or prospective, may be recovered in a single action. Moreover, recovery of all such dam-

ages must be in a single action, under the rule which prohibits splitting causes of action. The damages so recovered are called 'permanent or original damages.' They are given on the theory that the cause of injury is fixed and that the property must always remain subject to such injury and for the purpose of preventing a multiplicity of suits and putting an end to litigation."

And, in 1 Amer. Jur., under Actions, § 118, p. 498, the text writer says: ''Generally, it may be said that the question as to whether there is a right to but one action for injuries caused by a nuisance or a right to successive actions depends upon whether the cause of the injury is permanent or temporary and upon the character of the injury. If the cause is temporary, there is a right to successive actions. . . . If, however, the cause of injury is a permanent nuisance, as where permanent structures are erected infringing on the plaintiff's rights in his land, such as railroad embankments, culverts, bridges, and dams, a single action should be brought for the entire damages, both past and prospective, which will bar a subsequent action. This is particularly true where the original act creates a nuisance to land which is permanent in its nature and at once necessarily productive of all the damage which can ever result from it, or which indicates prospective injuries that are obviously and necessarily certain and reasonably capable of being estimated for all time."

The three-year statute of limitations does not apply here. *Baldwin* v. *Neal,* 190 Ark. 673, 80 S. W. 2d 648.

We conclude, therefore, that so much of the judgment as allowed recovery for the alleged damages growing out of the 1945 flood in the amount of $4,000 was erroneous. That part of the judgment awarding appellees $3,000 for permanent injuries to the land and crop damage resulting from the 1943 flood is affirmed.

Accordingly, the total judgment of $7,000 is reduced to $3,000, and as so modified, is affirmed.