SLIP OPINION

Cite as 2014 Ark. App. 646

# ARKANSAS COURT OF APPEALS

DIVISION IV
No.   CV–14–333

|  |  |
|---|---|
| VALLEY ESTATES, LIMITED PARTNERSHIP<br><br>APPELLANT<br><br>V.<br><br><br>R.M. PANGLE and LOIS K. PANGLE<br>APPELLEES | Opinion Delivered   NOVEMBER 12, 2014<br><br>APPEAL FROM THE BAXTER COUNTY CIRCUIT COURT<br>[NO. CV–12–136–3]<br><br>HONORABLE JOHN R. PUTMAN, JUDGE<br><br>REVERSED AND DISMISSED |

**KENNETH S. HIXSON, Judge**

This case involves the construction of an apartment complex that caused drainage damage to a homeowner's adjacent property.  The appellees are R.M. Pangle and Lois K. Pangle, who have lived in their house in Mountain Home since 1974.  The appellant is Valley Estates, Limited Partnership.  Valley Estates completed construction of the apartments at issue in late 2007.  Valley Estates appeals from a judgment in favor of the Pangles, wherein the trial court found that Valley Estates created a nuisance and awarded the Pangles $7087.50 in compensatory damages and $10,000 in punitive damages.  Valley Estates' primary argument on appeal is that the Pangles' action was barred by the applicable statute of limitations.  We agree, and we reverse and dismiss.

The Pangles initiated this case on June 4, 2012, when they filed a complaint against Valley Estates of Mountain Home Phase II, Limited Partnership, alleging that the

SLIP OPINION

construction of the apartment complex caused drainage damage to the Pangles' adjacent property. The Pangles amended their complaint on August 21, 2012, substituting Valley Estates, Limited Partnership as the proper defendant. The Pangles filed a second amended complaint on March 5, 2013, asserting that the construction of the apartment created a nuisance and changed the slope of the terrain, resulting in damage to the Pangles' gravel driveway "every time it rains." The Pangles claimed that their driveway had been damaged more than eighty-seven times since June 2009 by rainfalls of one-half inch or more, and that every time the driveway was damaged the Pangles were forced to repair the driveway at their own expense.

In defending against the Pangles' lawsuit, Valley Estates asserted that the Pangles' claims were barred by the three-year statute of limitations. Valley Estates argued that the Pangles were asserting a permanent nuisance, as opposed to a temporary nuisance, and that the Pangles' cause of action arose upon completion of the construction project in late 2007. Because the Pangles filed their original complaint more than three years later on June 4, 2012, Valley Estates contended that the action was time-barred.

Mr. Pangle testified at the bench trial. He stated that on three occasions during construction of the apartment complex he spoke with supervisors of Valley Estates expressing his concerns about the change in the slope of the terrain. According to Mr. Pangle, the supervisors promised that they would fix the slope but it never happened. Mr. Pangle also stated that, when the apartments were built, Valley Estates installed twenty-one downspouts that drain onto his driveway. Mr. Pangle testified that the project engineer for Valley Estates

had promised to take measures to alleviate the drainage problem, but that Valley Estates made no attempt to divert the water.

Mr. Pangle testified that any time it rained any amount, the water would flow from the apartments and wash out his driveway. Mr. Pangle stated that each time his driveway was damaged, he would repair it by rebuilding and grading it with his tractor. Mr. Pangle stated that the drainage issues were probably the worst thing that had ever happened to him, and that the damage occurred with such frequency that his quality of life was adversely affected from losing sleep. He said that he had to repair his driveway just a week before trial.

Ben Strider, an engineer, visually inspected the parties' properties. Mr. Strider testified that the apartment construction plans were not completed properly because there was no ditch behind one of the buildings to prevent water from flowing onto the Pangles' land. Mr. Strider further stated that the drainage problems were exacerbated by downspouts off of the back of the apartment buildings, which are aimed at the Pangles' property without the benefit of an underground drain. Mr. Strider stated that, as a result of these construction issues, damaging water flowed onto the Pangles' driveway.

In the trial court's judgment awarding compensatory and punitive damages to the Pangles, it found that the drainage issues caused by the apartment construction resulted in damage to the Pangles' property only at certain times, dependent on the rainfall. The trial court concluded that the statute of limitations began to run from the happening of each injury complained of and that there may be as many successive recoveries as there are successive injuries. The trial court found that the Pangles proved that the water drainage from Valley

3

Estates' property was a nuisance from which they had been damaged, and the trial court based its compensatory award on the aggregate repair costs incurred by the Pangles over the three years preceding the filing of their lawsuit. The trial court also awarded the Pangles $10,000 in punitive damages against Valley Estates.

In this appeal, Valley Estates argues that the trial court erred in finding that the negligently constructed apartment complex constituted a temporary nuisance, as opposed to a permanent nuisance. The question of whether a nuisance is permanent or temporary is a question of law. *See McAllister v. St. Louis, I.M. & S. Ry. Co.*, 107 Ark. 65, 154 S.W. 186 (1913). The appellate court gives no deference to conclusions of law, which are reviewed de novo. *Aceva Techs., LLC v. Tyson Foods, Inc.*, 2013 Ark. App. 495, 429 S.W.3d 355. The statute of limitations for a nuisance claim is three years, *see Jones v. Sewer Improvement District No. 3 of City of Rogers*, 119 Ark. 166, 177 S.W. 888 (1915), and Valley Estates argues that because a permanent nuisance was created when the apartment complex was completed in 2007, the three-year limitations period expired prior to the filing of the Pangles' complaint.

The pivotal issue in this case is whether the nuisance created by Valley Estates was permanent, in which case the limitations period expired, or temporary, in which case the Pangles have a right to successive actions for each injury and are not barred from recovery by the statute of limitations. We hold, as a matter of law, that the nuisance complained of is permanent and therefore that the Pangles' action was barred by the statute of limitations.

Under Arkansas law, the general policy for a nuisance claim is to avoid multiplicity of actions and, if practical, to afford compensation in one action for all injuries. *Int'l Shoe Co.*

*v. Gibbs*, 183 Ark. 512, 36 S.W.2d 961 (1931). When a nuisance is of a permanent character, and its construction and continuance are necessarily an injury, the damage is original and may be at once fully compensated, and the statute of limitations begins to run upon the construction of the nuisance. *Turner v. Overton*, 86 Ark. 406, 111 S.W. 270 (1908). Where the cause of injury is a permanent nuisance, as where permanent structures are erected infringing on the plaintiff's rights to his land, such as railroad embankments, culverts, bridges, and dams, a single action should be brought for the entire damages, both past and prospective, which will bar a subsequent action. *Missouri Pac. R.R. Co. v. Neal*, 212 Ark. 866, 208 S.W.2d 176 (1948). A permanent nuisance is one that will continue without change from any cause except human labor. *See Kelly v. Kansas City S. Ry. Co.*, 92 Ark. 465, 123 S.W. 664 (1909). Where a nuisance causes a permanent injury to property, the measure of damages will be the depreciation in the value of the property; that is, the difference between its value before and after the injury. *Czarnecki v. Bolen-Darnall Coal Co.*, 91 Ark. 58, 120 S.W. 376 (1909).

A temporary nuisance, on the other hand, has been defined as a temporary interference with the use and enjoyment of property. *See Filisko v. Bridgeport Hydraulic Co.*, 404 A.2d 889 (Conn. 1978). Examples of a temporary nuisance include yelping dogs, misdirected golf balls, or offensive odors. Howard W. Brill, *Arkansas Law of Damages* § 28:4 (5th ed. 2004). Our supreme court has held that when a structure is permanent in its character, and its construction and continuance are not necessarily injurious, but may or may not be so, the injury to be compensated in a suit is only the damage that has happened, and there be as many successive recoveries as there are successive injuries; in such case the statute of limitations

begins to run from the happening of the injury complained of. *St. Louis, Iron Mountain & S. Ry. Co. v. Biggs*, 52 Ark. 240, 12 S.W. 331 (1889). If an injury is not a permanent one but only temporary or removable, the measure of damages has been held to be the depreciation in the rental value of the property during the time of its maintenance or up to the time of trial. *Czarnecki*, *supra*.

In the case at bar the nuisance created by the construction of the apartment complex created a permanent nuisance, i.e., a nuisance that may be expected to continue. *See O'Brien v. City of O'Fallon*, 400 N.E.2d 456 (Ill. App. Ct. 1980). Mr. Pangle testified that he knew during construction that the construction was going to cause drainage issues to his property, and the construction itself caused inevitable and certain injury to the Pangles. In the Pangles' complaint they alleged that their property was damaged every time it rained and that damage had occurred more than eighty-seven times in less than three years. It is clear that the nuisance is permanent in that it will continue to cause drainage damage to the Pangles' driveway.

In *Missouri Pacific Railroad Co.*, *supra*, it was alleged that the appellant railroad company had negligently constructed a roadbed with insufficient openings and drains. This resulted in an overflow of flood waters in 1943 and again in 1945 that caused damage to the appellees' adjoining property and the destruction of growing crops. The appellees attempted to sustain separate claims for damages from the 1943 and 1945 incidents. However, the supreme court held that the injury caused by the railroad's negligence in failing to provide sufficient openings and drains at once caused a permanent nuisance damaging the appellees' property, and that

the recovery for damages was limited to a single action as opposed to successive actions for a recurring damage from the same cause. The supreme court quoted from the following excerpt in 15 Am. Jur. *Damages* § 25:

> If an injury to realty is permanent in character, all the damages caused thereby, whether past, present, or prospective, may be recovered in a single action. Moreover, recovery of all such damages must be in a single action, under the rule which prohibits splitting causes of action. The damages so recovered are called "permanent or original damages." They are given on the theory that the cause of injury is fixed and that the property must always remain subject to such injury and for the purpose of preventing a multiplicity of suits and putting an end to litigation.

Similar to the permanent drainage issues caused by the railroad's roadbed construction in *Missouri Pacific Railroad Co.*, Valley Estates' apartment construction caused a permanent nuisance to the Pangles' property in the case at bar. *See also Turner*, *supra* (construction of a ditch accelerating water flow and resulting in twelve overflows in a year is a permanent nuisance).

In arguing that only a temporary nuisance was created, the Pangles rely on *Jones v. Sewer Improvement District No. 3 of City of Rogers*, 119 Ark. 166, 177 S.W. 88 (1915). That case involved a nuisance caused by the discharge of sewage onto the plaintiffs' land. However, that case is distinguishable because there it was not the permanent construction of the sewers that created the nuisance; rather, it was the faulty operation and maintenance of the sewer. In the present case, the faulty construction of the apartment complex caused a permanent nuisance with no further conduct required by Valley Estates. Because the permanent nuisance arose and was immediately actionable when the apartments were

completed in 2007, and the Pangles' complaint was filed more than three years later in June 2012, the Pangles' lawsuit was barred by the statute of limitations.

Valley Estates also argues that the trial court erred in awarding punitive damages to the Pangles. Valley Estates is correct. In the absence of an award of damages for the underlying cause of action, punitive damages are improper. *Bell v. McManus*, 294 Ark. 275, 742 S.W.2d 559 (1988). Because the Pangles' action was time-barred and the trial court thus erred in awarding compensatory damages, its award of punitive damages must be reversed as well.

Reversed and dismissed.

WHITEAKER and BROWN, JJ., agree.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Alex T. Gray* and *Brian A. Pipkin*, for appellant.

*Cooper & Bayless*, by: *Paul Bayless*, for appellees.